[No. D035248. Fourth Dist., Div. One. Mar. 27, 2001.]

THOMAS H. KLINE, Plaintiff and Appellant, v.
BRYAN TURNER et al., Defendants and Respondents.

COUNSEL

Thomas H. Kline, in pro. per.; and J. Michael Vallee for Plaintiff and Appellant.

Stephen P. Oggel for Defendants and Respondents.

OPINION

BENKE, Acting P. J.—In 1999 plaintiff Thomas H. Kline sued defendants Priority Records, Inc. (Priority), a recording company, and its president Bryan Turner for alleged fraudulent acts occurring in 1990. Turner and Priority moved for summary judgment, arguing the action was time-barred. The trial court granted the motion. Judgment for Priority and Turner followed. Kline appeals.

### BACKGROUND

In 1990 Kline, a talent agent, entered into an oral production contract through Turner with Priority for the services of a musical group, "Miss Allen

and Nem." Priority agreed to immediately pay Kline $50,000 with an additional $50,000 to be paid after the completion of a master recording. On Friday August 31, 1990, Kline sent a business associate, Marion Knight, to Priority to pick up a check for $50,000 owed Kline under the contract. Turner and Kline agreed the check would be made payable to Kline. When Knight did not immediately return, Kline called Priority and learned that at Knight's insistence the check was made payable to him. Kline was told Knight had stated the change in payee was "okay with Mr. Kline." When Kline stated in "no uncertain terms" the payee should not have been changed, Priority assured Kline it would stop payment on the check. On Monday, Priority told Kline the check was cashed before the stop payment order.

Several days later Kline met Knight. Knight explained he took the money to cover legal expenses. Knight showed Kline a gun, threatened Kline and his family and told him to "back off." Fearful of Knight and believing Priority had either been intimidated or believed it appropriate to make the check payable to Knight, Kline did nothing.

On February 2, 1996, Kline received a letter, dated January 19, 1996, from an attorney representing him in an unrelated matter. Enclosed with the letter was a contract between Priority and Knight entered into on August 31, 1990, for the artistic services of Miss Allen and Nem and a copy of the $50,000 check received by Knight on that date. A stamp on the check indicated it was cashed on September 4, 1990, not on August 31, 1990, as Priority had represented to Kline.

Kline believed Priority concluded it was more advantageous to contract with Knight for the services of Miss Allen and Nem and concocted the story of mistakenly giving Knight a check and being unable to cancel it as a means of hiding its fraudulent conduct. On February 1, 1999, Kline sued Priority and Turner for fraud.

Priority and Turner moved for summary judgment, arguing the action was barred by the three-year statute of limitations applicable to fraud. In reply Kline asserted the "discovery rule," arguing he was not on notice of fraudulent conduct until February 2, 1996, and his action filed on February 1, 1999, was, therefore within the three-year statute of limitations.

The trial court granted Priority and Turner's motion for summary judgment. It concluded that in September 1990 Kline had reasonable cause to

suspect wrongdoing by Priority and Turner such that a reasonable person would be placed on inquiry. Kline was required to pursue the matter then. The statue of limitations began to run at that time, not with his discovery six years later of particular facts concerning Turner and Priority's conduct. Judgment was entered for Priority and Turner. This appeal followed.

## DISCUSSION

Kline argues the trial court erred in determining his causes of action time-barred. He contends the date of the accrual of his causes of action is a factual issue and should be decided at trial.

### A.  Standard of Review

A motion for summary judgment is properly granted if the papers submitted show there is no triable issue as to any material fact and the moving party is entitled to a judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c).) A defendant moving for summary judgment must show either one or more essential elements of the plaintiff's cause of action cannot be separately established or there is an affirmative defense which bars recovery. If the plaintiff fails to set forth specific facts showing a triable issue of material fact as to that cause of action or defense, summary judgment must be granted. (Code Civ. Proc., § 437c, subds. (n), (o)(2).)

A three-step analysis is employed in ruling on motions for summary judgment. First, the court identifies the issues framed by the pleadings. Next, the court determines, when the moving party is the defendant, whether it has produced evidence showing one or more of the elements of the cause of action cannot be established or there is a complete defense to that cause of action. If the defendant does so, the burden shifts to the plaintiff to show the existence of a triable issue of material fact as to that cause of action or defense. (*Zavala v. Arce* (1997) 58 Cal.App.4th 915, 925-926 [68 Cal.Rptr.2d 571].)

We independently review the parties' papers supporting and opposing the motion, using the same method of analysis as the trial court. Essentially, we assume the role of the trial court and apply the same rules and standards. (*Zavala v. Arce, supra,* 58 Cal.App.4th at p. 925; *AARTS Productions, Inc. v. Crocker National Bank* (1986) 179 Cal.App.3d 1061, 1064-1065 [225 Cal.Rptr. 203].)

### B.  Statute of Limitations

An action for relief on the grounds of fraud or mistake must be commenced within three years. However, such action is not deemed accrued

"until the discovery, by the aggrieved party, of the facts constituting the fraud or mistake." (Code Civ. Proc., § 338, subd. (d).) The courts interpret discovery in this context to mean not when the plaintiff became aware of the specific wrong alleged, but when the plaintiff suspected or should have suspected that an injury was caused by wrongdoing. The statute of limitations begins to run when the plaintiff has information which would put a reasonable person on inquiry. A plaintiff need not be aware of the specific facts necessary to establish a claim since they can be developed in pretrial discovery. Wrong and wrongdoing in this context are understood in their lay and not legal senses. (*Jolly v. Eli Lilly & Co.* (1988) 44 Cal.3d 1103, 1110-1111 [245 Cal.Rptr. 658, 751 P.2d 923].)

The court in *Parsons v. Tickner* (1995) 31 Cal.App.4th 1513, 1525 [37 Cal.Rptr.2d 810], a fraud case, referring to the discovery rule, stated: " 'Under this rule constructive and presumed notice or knowledge are equivalent to knowledge. So, when the plaintiff has notice or information of circumstances to put a reasonable person on inquiry, or has the opportunity to obtain knowledge from sources open to [her] investigation (such as public records or corporation books), the statute commences to run.' (3 Witkin, Cal. Procedure [(3d ed. 1985)] Actions, § 454, pp. 484-485.)"

■ Generally, statute of limitations issues raise questions of fact that must be tried; however, when the uncontradicted facts are susceptible of only one legitimate inference, summary judgment is proper. (*Jolly v. Eli Lilly & Co., supra,* 44 Cal.3d at p. 1112.)

C. *Analysis*

■ The trial court correctly found Kline's lawsuit was time-barred. The only legitimate inference based on the uncontroverted facts is that in September 1990 a reasonable person in Kline's position would conclude he was injured as the result not only of Knight's wrongdoing but of Priority's as well. Priority had agreed to pay Kline $50,000 in the form of a check made payable to him. On the representation of Knight, who was acting merely as Kline's courier, Priority's staff, without clearing the change with Kline, gave Knight Kline's $50,000. Doing so was wrong and injurious in both a lay and legal sense. Kline was thus on inquiry. Discovery and/or investigation concerning the events would have revealed the fraud and the statute of limitations had begun to run.

The dissent argues our application of *Jolly* is insufficiently discriminating. Based on *Snow v. A. H. Robins Co.* (1985) 165 Cal.App.3d 120, 128-134

[211 Cal.Rptr. 271], it contends it is not the suspicion of a general wrong but rather the suspicion of a particular wrong that is crucial. In *Snow* the court found time-barred negligence and products liability causes of action but not a fraud cause of action. The court so decided since in its view while the plaintiff was almost immediately on inquiry as to the negligence and products liability causes of action, she had no reason to suspect fraud until a much later date. The court concluded the fraud cause of action did not accrue until that later time.

We first note *Jolly* was decided three years after *Snow*. We agree with the dissent that *Jolly*'s language defining the discovery rule is general and expansive, but disagree the language applies only to the facts of that case, i.e., a cause of action accrues when the wrong is suspected even if its exact cause or the identity of the wrongdoer is unknown. We conclude the language is also applicable to ignorance concerning the specific causes of action arising from the wrong.

In any event, even if we were to accept the dissent's application of *Snow,* we would still conclude the statute of limitations bars this action. We conclude as a matter of law that Kline was reasonably on inquiry that Priority was engaged in fraud. Priority had done an inexplicable act. With an agreement that Priority would pay him $50,000, it instead made the check out to Kline's courier. It told Kline it did so based on the courier's representation such a change was with Kline's approval. It did this without attempting to notify Kline there had been a change in plan. Kline should reasonably have suspected a possible explanation for Priority's action was something other than negligence. Kline's contract with Priority involved a continuing relationship between Kline, Priority and Miss Allen and Nem. A change in the representation of Miss Allen and Nem could not have been lost on Kline. Kline was on inquiry notice. Thus, the fraud cause of action accrued in 1990 and the fraud cause of action was time-barred.

We also note Kline's claimed fear of Knight is of no legal consequence. The present case deals with a suit against Turner and Priority. When Kline discovered facts which led him to believe he had been defrauded by them, he sued, albeit not promptly. Kline asserts that until he discovered he had been defrauded by Turner and Priority, he believed they were also victims of Knight. However, this assertion does not advance his position. That Knight may have fooled Turner and Priority does not mean they had not, in both a lay and legal sense, also wronged Kline. Kline was on inquiry in 1990 concerning the actions of Turner and Priority. His suit for fraud filed against them in 1999 was time-barred.

The judgment is affirmed. Respondents to recover costs on appeal.

O'Rourke, J., concurred.

**McINTYRE, J.**—I respectfully dissent, as I disagree with the conclusion reached both by the trial court and the majority that plaintiff Thomas H. Kline's fraud claims are barred by the statute of limitations. The majority concedes that "[g]enerally, statute of limitations issues raise questions of fact that must be tried; however, when the uncontradicted facts are susceptible of only one legitimate inference, summary judgment is proper." (Maj. opn., *ante*, at p. 1374.) However, it concludes that "[t]he only legitimate inference based on the uncontroverted facts is that in September 1990 a reasonable person in Kline's position would conclude he was injured as the result not only of Knight's wrongdoing but of Priority's as well." (Maj. opn., *ante*, at p. 1374.) The basis for this conclusion is said to be that the facts known to Kline placed him on inquiry that defendant Priority Records, Inc. (Priority) did something wrong and had he proceeded against Priority, discovery would have revealed its fraudulent conduct. In 1990, the only claims against Priority would have been for breach of contract, negligence or some other similar theory based upon Priority's placing Marion Knight's name on the check in place of Kline's. Thus, the majority's conclusion is based on the theory that if a party has sufficient information to permit the initiation of any claim against another, that same information starts the statute of limitations for fraud.

The principal case cited by the majority for this proposition is *Jolly v. Eli Lilly & Co.* (1988) 44 Cal.3d 1103 [245 Cal.Rptr. 658, 751 P.2d 923] (*Jolly*), which does indeed state that the statute of limitations begins to run when the plaintiff has information that would put a reasonable person on inquiry and that a party need not be aware of the specific facts necessary to establish a claim, since they can be developed in pretrial discovery. However, the context in which this language appears is quite different than the facts in this case. In *Jolly*, the question was whether the plaintiff had sufficient information about whether the ingestion of a particular drug might have caused her medical conditions and injuries of which she was clearly aware. Here, that language is being used to support the holding that *as a matter of law* the statute of limitations for fraud commences to run even though it is arguable whether Kline had reason to know or suspect that Priority had defrauded him. I do not think the *Jolly* case supports the holding here.

The majority also cites *Parsons v. Tickner* (1995) 31 Cal.App.4th 1513 [37 Cal.Rptr.2d 810] (*Parsons*), and quotes general language which comes from 3 Witkin, California Procedure (3d ed. 1985) Actions, section 454, pages

484-485, setting forth the general discovery rule. The holding of *Parsons,* however, does not support the application of the *Jolly* language to the issue in this case. There, the appellate court reversed an order sustaining a demurrer without leave to amend holding that the trial court erred in determining that the three-year fraud statute of limitations barred the plaintiff's fraud claims. The plaintiff alleged that the defendant owners of a music company concealed the fact that the plaintiff's decedent, a songwriter, never transferred the copyrights to his music to them although they had the right to publish and collect royalties on the catalogue of music. The *Parsons* court rejected an argument similar to the one here—that the plaintiff could not be excused from discovery of the concealed facts because she was aware for many years of the existence of royalty contracts relating to the decedent's music. It stated that the plaintiff was not in possession of any information that would have reasonably revealed that the decedent had not transferred the copyrights to the defendants. In short, *Parsons* is similar to this matter in that the plaintiff had some information about the defendant's conduct but not enough to say as *a matter of law* that the plaintiff was on inquiry from the beginning.

As to whether knowledge of some wrongdoing on the part of the defendant necessarily starts the running of the fraud statue of limitations, the holding in *Snow v. A. H. Robins Co.* (1985) 165 Cal.App.3d 120 [211 Cal.Rptr. 271] (a case mentioned in *Jolly*) is to the contrary. In a personal injury action brought by the user of an IUD against its manufacturer, the court distinguished, for the purposes of applying statutes of limitations, between the wrongs asserted in causes of action for fraud and misrepresentation from claims for negligence, strict liability and breach of warranty. It held that while the latter claims were time-barred, the former were not, as the plaintiff was entitled to the benefit of the rule tolling the statute until the discovery of the facts constituting the fraud. The same analysis applies here. Kline's claims for breach of an oral agreement and negligence are barred but the trier of fact must determine whether the fraud statute of limitations has expired.

Kline's opposition to the motion for summary judgment was that in 1990, Priority told him that Knight persuaded it to issue the check to Knight rather than Kline, and further stated that although it had tried a stop payment on the check, its efforts were ineffective because Knight cashed the check immediately. Neither Priority nor Knight told Kline in 1990 that at the same time the check was given to Knight, Priority signed a record contract with Knight to represent the same group which Kline already represented and that had contracted with Priority to provide certain recordings. Kline contends that this piece of information was learned only in 1996, within three years of the

filing of the lawsuit. There is triable issue of fact as to whether Kline was on inquiry notice of a potential fraud claim against Priority in 1990 or only when he obtained the additional information in 1996. Accordingly, I would reverse the grant of the summary judgment in this case.

Appellant's petition for review by the Supreme Court was denied June 13, 2001.