Yvacheslav **AVERBACH**, et al., Plaintiffs,

v.

**VNESCHECONOMBANK**, et al., Defendants.

No. C–02–5156 EMC.

United States District Court, N.D. California.

Aug. 19, 2003.

---

Robert E. Capron, Attorney at Law, San Francisco, CA, for Plaintiffs.

Stephen V. Bomse, Todd Adler, Heller Ehrman White & McAuliffe LLP, San Francisco, CA, for Defendants.

### ORDER GRANTING SUMMARY JUDGMENT IN FAVOR OF DEFENDANT (Docket No. 6)

CHEN, United States Magistrate Judge.

In this suit, Plaintiff alleges breach of contract; intentional fraud, negligent misrepresentation, intentional infliction of emotional distress, and negligent infliction of emotional distress. The Court held a hearing on Defendant's motion to dismiss on March 19, 2003. Robert Capron ap-

peared on behalf of the Plaintiff and Stephen Bomse and Todd Adler of Heller Ehrman White & McAuliffe appearing on behalf of Defendant. Having considered the papers filed in support of and in opposition to the motion and the argument of counsel, and good cause appearing therefor, the Court hereby treats Defendant's motion to dismiss as one for summary judgment and GRANTS Defendant's motion (Docket No. 6).

## I. *FACTS*

Defendant Vnescheconombank (hereinafter "VEB") is a bank with its principal offices in Moscow, Russia. Complaint ¶ 2. Plaintiff Vyacheslav Averbach (hereinafter Averbach) is a citizen of the United States, resident of California, doing business as Glaster Laboratories. Complaint ¶ 1.

In May 1991, Plaintiff entered into a written contract with Central Innovation Alter Corporation (hereinafter "Central Innovation") for the sale of zippers to Central Innovation in Kiev, Ukraine for $759,375.00. Complaint ¶ 5. Pursuant to the terms of the contract, Central Innovation provided Plaintiff with an irrevocable letter of credit (hereinafter "LOC") through VEB for $759,375.00. Complaint ¶¶ 6–7. On January 9, 1992 VEB issued the LOC to Plaintiff in California. Complaint ¶ 8. The LOC required Plaintiff to comply with the conditions set forth in the LOC by January 30, 1992 (including submitting Title, Insurance, and Shipping Documents to VEB) and reported Bank of America in San Francisco as the paying bank. Complaint ¶¶ 7–8. Plaintiff shipped the zippers to Central Innovation and completed the conditions set forth in the LOC by January 30, 1992. Complaint ¶¶ 9–10.

On April 7, 1992, VEB informed Plaintiff by a teletyped letter that payment of the LOC was temporarily suspended until funds are given by the Central Bank of Russia, in accordance with a January 13, 1992 decision by the "Presidium of the Soviet Supreme" and a February 14, 1992 letter VEB received from the Central Bank of Russia. Complaint ¶ 11; Plaintiff's Supp. Brief, Exh. 2. Plaintiff alleges on information and belief that sometime after the LOC was issued on January 9, 1992, and before Plaintiff authorized shipment of the zippers, VEB knew but failed to disclose to Plaintiff the decision of the Presidium of the Soviet Supreme. Complaint ¶ 28. Plaintiff further contends that it relied on VEB's April 7, 1992 "promise" to pay when funds were made available by the Central Bank of Russia. Complaint ¶¶ 11–12.

The next contact between the parties alleged by Plaintiff occurred in September 1995 when VEB informed Plaintiff that the LOC debt of $759,375.00 was recorded on VEB's books and requested that Plaintiff verify that amount. Complaint ¶ 13. Soon thereafter Plaintiff informed VEB in writing that this amount was correct. *Id.*

VEB contacted Plaintiff on July 31, 1996 and claimed that Central Innovation never received the zippers which were the basis of the contract and LOC. Complaint ¶ 14. Accordingly, VEB requested that Plaintiff cancel the LOC. *Id.* On August 5, 1996 Plaintiff informed VEB in writing that delivery was completed to Central Innovation in January 1992 and that all of the terms of the LOC had been met. *Id.* Plaintiff requested payment in accordance with the LOC once VEB received funds from the Central Bank of Russia. *Id.* Plaintiff heard nothing further regarding VEB's assertion that Central Innovation did not receive the zippers. *Id.*

On August 12, 1998 VEB informed Plaintiff, in writing, that the documents Plaintiff submitted to VEB in January 1992 were "in accordance with the terms set forth" in the LOC. Complaint ¶ 15.

In June 2001, VEB requested from Bank of America it's Album of Signatures authorizing the Bank of America to act on Plaintiff's behalf with regard to the LOC. Complaint ¶ 16. Bank of America submitted the appropriate paperwork to VEB. Complaint ¶ 16. At this point, VEB informed Plaintiff that the January 1992 LOC was still registered in their books (Complaint ¶ 17) and VEB requested verification from Plaintiff that they were authorized to operate as Glaster Laboratories, which Plaintiff promptly provided. *Id.*

On November 22, 2001 VEB informed Plaintiff that the documents submitted by Plaintiff in January 1992 did not meet the terms of the LOC and therefore VEB would not honor the LOC. Complaint ¶ 19.

## II. *PROCEDURAL BACKGROUND*

On September 17, 2002, Plaintiffs filed in the Superior Court of California a complaint for: [1] breach of contract; [2] intentional fraud; [3] negligent misrepresentation; [4] intentional infliction of emotional distress; and [5] negligent infliction of emotional distress.

On October 24, 2002, Defendant filed for removal to the Northern District of California pursuant to 28 U.S.C. § § 1441 and 1446. On December 24, 2002, Defendant filed a Fed.R.Civ.P. Rule 12(b)(6) motion to dismiss.

After reading the papers submitted by the parties, the Court ordered the parties to produce certain documentary evidence referred to in the parties' papers. On March 14, 2003, this Court ordered the following documents be authenticated and produced. In particular, such documents include:

1. February 14, 1992 letter from the Central Bank of Russia.
2. April 7, 1992 contact informing Plaintiff that payment was suspended. Please clarify if this was in writing.
3. September 1995 contact informing Plaintiff that debt was on VEB's books. Please clarify if this was in writing.
4. July 31, 1996 contact informing Plaintiff that Central Innovation did not receive the zippers which were the basis of the contract. Please clarify if this was in writing.
5. August 5, 1996 reply verifying that zippers were sent.
6. August 12, 1998 contact from VEB affirming that Plaintiff had complied with terms of the 1992 LOC.
7. VEB's June 2001 request to Bank of America and Bank of America's reply to VEB.
8. Additional information about the contracting for the LOC. Specifically, did any in-person meeting occur?
9. Any additional information about the role Bank of America played in the transaction: Was the bank a confirming bank? How active was its role?

The parties submitted documents and supplemental briefs. A hearing was conducted on March 19, 2003, and both parties stipulated to the authenticity of the documents provided to the Court, including the accuracy of documents translated from Russian.

The Court's ruling was deferred pending the parties' attempt to mediate a resolution of the case. That effort did not produce settlement.

## III. *LEGAL ANALYSIS*

**A. Motion to Dismiss Treated as a Motion for Summary Judgment**

■ A motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) tests the sufficiency

of the complaint. *North Star Int'l v. Arizona Corp. Comm'n,* 720 F.2d 578, 581 (9th Cir.1983). Dismissal of an action pursuant to Rule 12(b)(6) is appropriate only where it "appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Levine v. Diamanthuset, Inc.,* 950 F.2d 1478, 1482 (9th Cir.1991); *Allwaste, Inc. v. Hecht,* 65 F.3d 1523, 1527 (9th Cir.1995). The issue is not whether the plaintiff will ultimately prevail, but whether the plaintiff is entitled to offer evidence to support his or her claims. *Gilligan v. Jamco Development Corp.,* 108 F.3d 246, 249 (9th Cir.1997).

Rule 12(b)(6) provides that if, on a motion to dismiss for failure to state a claim upon which relief can be granted, "matters outside the pleading are presented and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56." Fed. R.Civ.P. 12(b)(6); *see also Pool Water Products v. Olin Corp.,* 258 F.3d 1024, 1033 (9th Cir.2001). Given the posture of this case, with the Court requiring and relying upon submissions outside the pleadings, the Court must treat Defendant's motion as one for summary judgment under Fed.R.Civ.P. 56.

■ When a party is represented by counsel, formal notice that a motion to dismiss is being treated as a motion for summary judgment is unnecessary when a party has reason to know that the court will consider matters outside the pleadings. *Grove v. Mead School Dist.,* 753 F.2d 1528, 1532–33 (9th Cir.1985). The March 14, 2003 Order of this Court requiring the production of documents put the parties on notice that materials outside the pleadings would be considered in deciding Defendant's motion.

Rule 56 provides that summary judgment shall be granted upon showing that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The matters outside the pleadings considered by the Court must be viewed in the light most favorable to the non-moving party. *Coca–Cola Co. v. Overland, Inc.,* 692 F.2d 1250, 1253 (9th Cir.1982) ("Summary judgment is proper if the pleadings and evidence submitted in support of the motion show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law."). Moreover, because the present motion is a converted motion to dismiss, the Court considers all the allegations of the complaint as true as would normally be the case in a motion under Rule 12(b)(6). Indeed, the complaint herein is verified and thus may be treated as evidence under Rule 56.

The moving party possesses the initial burden of showing the absence of a genuine issue of fact. *See Blair Foods, Inc. v. Ranchers Cotton Oil,* 610 F.2d 665, 668 (9th Cir.1980). An issue of fact is "genuine" only if there is sufficient evidence (and in this case allegations) from which a reasonable fact finder could find for the non-moving party. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248–49, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Aydin Corp. v. Loral Corp.,* 718 F.2d 897, 902 (9th Cir.1983) (stating that a genuine issue is found where "a judge or jury [must] resolve the parties' differing versions of the truth at trial"). Justifiable inferences are to be drawn in the non-moving party's favor. *Anderson, supra,* 477 U.S. at 255, 106 S.Ct. 2505.

**B. Choice of Law**

■ VEB is an "agent or instrumentality" of a foreign state according to the Foreign Sovereign Immunities Act (FSIA). 28 U.S.C.A. § 1603(b); Notice of Removal ¶ 6. Where a civil action is brought against

an agent or instrumentality of a foreign state in federal court, federal common law choice of law rules apply. *Chuidian v. Philippine National Bank,* 976 F.2d 561, 564 (9th Cir.1992). Federal common law is guided by the Restatement (Second) of Conflict of Laws (1969). *Id.* Thus, the Restatement § 188 governs where, as here, there is an absence of effective choice of law between the parties. Section 188 provides that the choice of law is "the local law of the state which, with respect to that issue, has the most significant relationship to the transaction." *Id.* at § 188(1). The contacts to be considered in establishing which state has the most interest in the contract include: the place of contracting, the place of negotiation of the contract, the place of performance, the location of the subject matter of the contract, the domicil, residence, nationality, place of incorporation and place of business of the parties. *Id.* at § 188(2). Further, the Restatement provides that each of these contacts is to be considered in accordance with its relative importance with respect to the issue at hand. *Id.*

In *Chuidian,* the Ninth Circuit ruled all of the Restatement conflict of law factors supported the application of Philippine law. 976 F.2d at 565. The Court specifically rejected Chuidian's argument that because the Bank's Los Angeles branch was making the payment, the place of performance was the U.S. *Id.* at 563. Rather, the Ninth Circuit Court affirmed the district court's determination that the place of issuance of a LOC is the main factor in determining its place of performance, unless the paying bank is also a confirming bank or functions in role that is more than "merely mechanical." *Id.*

■ A confirming bank is a bank "authorized and obligated to pay the beneficiary on the letter of credit against the credit of the issuer. Upon receiving presentment documents from the beneficiary,

the confirming bank will make the payment to the beneficiary and seek reimbursement from the issuer." Robert Haig, 4 Business and Commercial Litigation in Federal Courts § 60.2 (1998). In this case, VEB contends and Plaintiff concedes that the Bank of America's San Francisco branch assumed no responsibility to pay the LOC and acted as an "advising bank" rather than a confirming bank. Plaintiff's Supp. Brief, at 4–5. The Court notes that the LOC states "Confirmation Instructions: Without." Plaintiff's Supp. Brief, Exh. 1. The case at bar is similar in this respect to *Chuidian,* where the Manila bank which issued the LOC was the nominating bank, and its Los Angeles branch served in a merely advisory capacity rather than as a confirming bank. 976 F.2d at 563. The Ninth Circuit found the fact that the Los Angeles branch was only acting in an advisory, mechanical way to be dispositive to the determination that Manila was the place of performance of the LOC and that Philippine law therefore governed. *Id.* at 563–64.

The Court finds for these reasons, *Chuidian* and the Restatement mandate the application of Russian law to Plaintiff's breach of contract claim. *See* 976 F.2d at 563–64. Moreover, although the Plaintiff argued in his initial opposition to the instant motion that California rather than Russian law applies to the breach of contract claim (Plaintiff's Opposition, at 5 n. 1), at the hearing Plaintiff conceded that he had no objection to applying Russian law to the LOC.

As to Plaintiff's tort claims, both parties agree that California law governs.

### C. Breach of Contract Claim

Russian law imposes a three year statute of limitations and does not allow parties to contractually change the statute of limitations. Civil Code of the Russian Fed-

eration, Chap. 12, Art. 196. Moreover, under Article 198, the limitations period may not be changed by agreement of the parties. *Id.* at Art. 198. It also provides, "The bases for suspending and interrupting the running of the periods of limitation of actions are established by the present Code and other statutes." *Id.* Plaintiff has not cited any Russian statute that would otherwise change or suspend the limitations period applicable to the LOC. Furthermore, Russian law also requires that foreign commercial transactions must be agreed upon in writing; if it is not, the transaction is invalid. *Id.* at Art. 162(3).

Defendant VEB argues that if the LOC was breached, it was breached on January 30, 1992, which is the expiration date of the LOC and the date that payment was due as Plaintiff alleges he had performed all of the LOC requirements. Motion to Dismiss, at 4. Plaintiff on the other hand, seeks to characterize the April 7, 1992 letter from VEB—informing Plaintiff of the suspension of payment until funds are made available from the Central Bank—as an offer to modify the LOC. Complaint, ¶¶ 11–12, 22; Plaintiff's Opposition, at 4. VEB disputes Plaintiff's attempted characterization, arguing that the April 7, 1992 letter was nothing more than notice of untimely performance.

If the April 7, 1992 letter constitutes a valid new contractual obligation—a modified LOC—then as Plaintiff argues, there was no breach until 2001, when VEB announced unequivocally that it would not pay on the LOC. On the other hand, if the April 7, 1992 letter did not effectuate a new contractual undertaking, the statute of limitations began to run as of the date of the alleged breach, when VEB failed to

pay Plaintiff on January 30, 1992. In the latter case, the statute of limitations for breach of contract, absent tolling, would have run as of January 30, 1995. The crucial issue, therefore, is whether the April 7, 1992 letter constituted a new modified LOC under applicable law.

The LOC itself states that its expiration date was January 30, 1992. Plaintiff's Supp. Brief, Exh. 1. By its terms, the LOC is subject to the Uniform Customs and Practice for Documentary Credits (1983 Revision), International Chamber of Commerce Publication 400 ("UCP 400"). Plaintiff's Supp. Brief, Exh 1. Neither party dispute the application of the UCP 400, which states:

> Instructions for the issuance of credits, the credits themselves, instructions for any amendments thereto and the amendments themselves must be *complete and precise.*

UCP 400, Art. 5 (emphasis added).[1]

The Court finds that the letter from VEB of April 7, 1992 fails to meet the criteria necessary to be deemed a new modified LOC giving rise to a new contractual obligation. First, the letter fails to comply with Article 5 of the UCP 400, which requires amendments to a LOC be "complete and precise." The Court's interpretation of this provision is consistent with other federal courts interpreting Article 5 of the UCP. In *3Com Corp. v. Banco de Brasil, S.A.,* 2 F.Supp.2d 452 (S.D.N.Y. 1998), *aff'd* by *3Com Corp. v. Banco do Brasil,* 171 F.3d 739, 745 (2d Cir.1999), the court declared:

> Article 12 of the UCP discusses the issue of "incomplete or unclear instructions" as it relates to "advising, confirm-

---

1. UCP 400 was superseded on January 1, 1994 by UCP 500. Likewise, UCP 500 requires that non-documentary conditions to a letter of credit be ignored. *See* Richard F. Dole, *The Essence of a Letter of Credit Under*

*Revised U.C.C. Article 5: Permissible and Impermissible Nondocumentary Conditions Affecting Honor,* 35 Hous. L.Rev. 1079, 1096 (1998).

ing or amending" a letter of credit. UCP 12 states that a "credit will be advised, confirmed or amended only when complete and clear instructions have been received...." Additionally, Article 5 of the UCP requires that "instructions ... for the credit itself, instructions for an amendment thereto, and the amendment itself, must be complete and precise." From both of these sections, it is apparent that businesses engaged in letter of credit transactions expect precision and clarity in terms and instructions relating to the letter of credit.

2 F.Supp.2d at 458; *see also Nassar v. Florida Fleet Sales Inc.*, 79 F.Supp.2d 284, 292 (S.D.N.Y.1999) ("Because of the exacting nature of this [strict compliance] standard, letters of credit, any amendments, and all instructions must be clear and unambiguous.") (citing UCP 400 Art. 5); *Cooperative Agricole Groupement De Producteurs Bovins De L'Ouest v. Banesto Banking Corp.*, 1989 WL 82454, at *22–23 (S.D.N.Y.1989) (letter that merely reiterates that LOC requirements have been met and that it should be paid is not a valid amendment under Article 5 of the UCP, which requires that amendments be "complete and precise"). As the Second Circuit observed in *3Com.*, supra, 171 F.3d at 744, "Simplicity and certainty are the hallmarks of the letter of credit transaction and explain the letter of credit's great utility." Here, the modified LOC, as posited by Plaintiff, has no definite or expiration payment date. It is left entirely open.[2]

Not only does the putative modified LOC of April 7, 1992 lack the completeness and certainty generally required under the UCP, the UCP specifically requires that all LOCs "must stipulate an expiry date for presentation of documents for payment, acceptance or negotiation." UCP 400, Art. 46(a). In fact, so strong is the rule in favor of a definite expiry date, that even language such as "for one month" or "for six months" is to be discouraged. UCP 400, Art. 46(c). As the Second Circuit held in *3Com, supra*, 171 F.3d at 745, ("UCP art. 42, which requires all credits to stipulate an expiry date and which explicitly discourages the use of marginally unclear terms—such as those providing that the Credit is to be available 'for one month', 'for six months', or the like—provides additional support for an extension of the 'clear and unequivocal' standard to termination of a credit."). *See also 3Com*, 2 F.Supp.2d at 458 ("Courts interpret the UCP as requiring strict compliance with expiry dates—i.e., parties are not expected to figure out whether a presentation is 'close enough' to the expiry date."); *Todi Exports v. Amrav Sportswear, Inc.*, 1997 WL 61063 at *5 (S.D.N.Y. 1997) (noting that the UCP requires that all LOCs "must stipulate an expiry date" and finding that a LOC stating that presentment was to occur "not later than May 30, 1994" had a valid expiration date); John F. Dolan, *The Law of Letters of Credit* ¶¶ 5.03[3][e] (1996) ("Issuers must know when their obligations expire.... Drafters must take care that the expiration provision in the credit is clear."); Reade H. Ryan Jr., *General Principles and Classifications of Letters of Credit*, R182 ALI–ABA 222, 234 (1992) ("A letter of credit should stipulate a specified expiration date for presentation of documents for payment, acceptance or negotiation.") (citing Article 46).

As noted above, in contrast to the January 1992 LOC, which specifies a certain

---

2. Plaintiff did not assert tolling in its opposition to VEB's motion. Plaintiff's Opposition, at 4–5. In any event, there was no alleged correspondence from VEB within the three year period after April 7, 1992, and thus no factual basis for any tolling.

expiration date of "30 Jan 92", the April 7th letter provides no such expiration date. Plaintiff's Supp. Brief, Exh 1–2. The complete absence of an expiration date is fatal to Plaintiff's argument that the April 7 letter constituted a valid modified LOC.

Moreover, LOCs "should clearly indicate" whether the credit is revocable or irrevocable. UCP 400, Art. 7(b). If revocable, the credit may be cancelled at any moment without notice. *Id.* at Art. 9(a). LOCs also "must clearly indicate whether they are available by sight payment, by deferred payment, by acceptance or by negotiation." *Id.* at Art. 11(a). If the credit is irrevocable and provides for deferred payment, then payment is made "on the date(s) determinable in accordance with the stipulations of the credit." *Id.* at Art. 10(a). The April 7, 1992 letter does not expressly state whether the credit is revocable or irrevocable. Its indication that payment would be made when available funds are provided by the Central Bank of Russia, but with no assurance such funds would ever be given, is decidedly ambiguous as to whether there is any irrevocable obligation, in violation of Article 7(b). Even if it were deemed clearly irrevocable, no date was given for payment, contrary to the requirement of Article 10(a).

In deciding a motion for summary judgment, all reasonable inferences are drawn in the non-moving party's favor. *Anderson*, 477 U.S. at 255, 106 S.Ct. 2505. Yet, even if the Court were to assume *arguendo* that (1) VEB did attempt to modify the LOC to defer payment until funds were available, and (2) this was a sufficient writing for purposes of Russian Civil Code Art. 162(3), the allegedly modified LOC is not valid for the reasons stat-

ed above. The conditional, open-ended terms of the alleged LOC, a LOC which according to Plaintiff lasted some nine years (1992–2001), fails to satisfy the UCP which undisputably governs this transaction.[3]

For the reasons stated above, the Court concludes that Plaintiff has not and cannot, in view of the undisputed documents, create a genuine issue of material fact as to whether the LOC was validly modified in April, 1992. *Cf. Transparent Products Corp. v. Paysaver Credit Union*, 864 F.2d 60, 62 (7th Cir.1988) ("[C]alling a pumpkin a 'letter of credit' will not make it one."). *See 3Com, supra*, 171 F.3d at 747 (failure of communication to meet "clear and unequivocal" standard was properly determined as a matter of law). It necessarily follows that Plaintiff's argument that breach occurred in 2001 must be rejected. Rather, breach occurred on January 30, 1992, when the LOC expired without Plaintiff receiving payment. Averbach's breach of contract claim, which was filed in September 2002, is barred under Russia's three year statute of limitations. Civil Code of the Russian Federation, Art. 196.

 At the hearing, the Court raised the issue that under California law, a new acknowledgment of a debt after the statute of limitations has expired can create a new contract for which the original barred debt is deemed to be consideration. *See Kaichen's Metal Mart, Inc. v. Ferro Cast Co.*, 33 Cal.App.4th 8, 15, 39 Cal.Rptr.2d 233 (1995) (citing Cal.Code Civil Procedure § 360); Witkin, 3 Cal. Procedure § 678 (4th ed., 1996). Plaintiff cites the post–1995 correspondence from VEB as such an acknowledgment. Yet, Plaintiff has since conceded and the Court finds that Russian

---

**3.** At the hearing, Plaintiff could not provide an example of an LOC lasting nine years, and clearly such a LOC would exceed the limits of accepted practice under U.C.C. § 5–106(c)–

(d) (LOC with no stated expiration date expires one year after date of issuance, letter of credit expressly stating that it is "perpetual" expires five years after date of issuance).

law applies. The Plaintiff fails to point either in his papers nor at oral argument to a similar doctrine under Russian law.[4] Indeed as noted above, Russian law appears to be strict in its application of the statute of limitations, not allowing its alteration absent statutory authority. Absent a doctrine parallel to the California rule regarding acknowledgment, once the statute of limitations expired, it is of no consequence that VEB subsequently contacted Plaintiff in September 1995 (three years and five months later after the April 1992 correspondence) and again in 1996, 1998 and 2001. *See* Plaintiff's Supp. Brief, Exh. 3–7. Furthermore, even if a new contract could be deemed supported by adequate consideration under Russian law, its terms are too indefinite and would thus be deficient under the UCP for the reasons stated above. Article 1 of the UCP states, "These articles apply to all documentary credits... and are binding on all parties thereto unless otherwise expressly agreed." UCP 400, Art. 1.

## D. Fraud, Negligent Misrepresentation, and Infliction of Emotional Distress

Plaintiff alleges that VEB committed fraud by intentionally and falsely representing that it would honor its obligations under the LOC with the intent to deceive Plaintiff. Complaint ¶¶ 26–41. Plaintiff also alleges negligent misrepresentation (*Id.* at ¶¶ 42–46), intentional infliction of emotional distress (*Id.* at ¶¶ 47–50), and negligent infliction of emotional distress. *Id.* at ¶¶ 51–53. As noted above, the parties agree that California law governs the non-contract claims.

Plaintiff asserts two acts of misconduct that provide the basis of all its tort claims.

First, Plaintiff alleges that VEB knew, by virtue of a decision of the Presidum of Soviet Supreme of January 13, 1992, that prior to the expiration of LOC set for January 30, 1992, VEB would not perform the terms of the LOC as it had promised. Complaint, ¶ 28. Accordingly, in reliance of the LOC and the non-disclosure by VEB, Plaintiff shipped the zippers to the buyer. Complaint, ¶¶ 10, 28. Second, Plaintiff contends that after the zippers were shipped, VEB engaged in a continuous scheme to mislead Plaintiff into believing VEB would pay on the LOC as soon as funds were available. Complaint, ¶ 36. This conduct occurred up until 2001 when VEB informed Plaintiff it would not pay. As to this latter conduct, Plaintiff does not contend it change its economic position in reliance upon VEB's alleged deceit; rather, its expectation of eventual payment resulted in Plaintiff's delay in bringing this suit.

■ The statute of limitations for fraud under California law is three years, starting from the time that the aggrieved party discovers the facts constituting fraud. Cal.Code Civil Procedure § 338(d). Discovering the facts constituting fraud occurs with either actual knowledge or when "plaintiff has notice or information of circumstances to put a reasonable person on inquiry, or has the opportunity to obtain knowledge from sources open to his investigation..." *General Bedding Corp. v. Echevarria,* 947 F.2d 1395, 1397 (9th Cir.1991); *see also Kline v. Turner,* 87 Cal.App.4th 1369, 1374, 105 Cal.Rptr.2d 699 (2001).

■ Plaintiff acknowledges that on April 7, 1992, VEB informed Plaintiff in writing that VEB's payment obligations

---

**4.** Because both parties agreed at the hearing that Russian law applied to Plaintiff's contract claim, the Court does not reach Defendant's additional argument that the amendment to the LOC would be invalid under California's Statute of Frauds and Cal. Commercial Code § 5104 *et seq.* *See* Defendant's Reply, at 4–5.

had been temporarily suspended in accordance with the decision of the Presidum of Soviet Supreme of January 13, 1992 and the direction of the Central Bank of Russia on February 14, 1992. Plaintiff's Supp. Brief, Exh. 2; *see also* Complaint, ¶ 30. Given that the LOC had already expired as of January 30, 1992 without Plaintiff receiving payment, VEB's April 1992 letter referring to the January 13, 1992 decision of the Presidium and the direction of the Central Bank on February 14, 1992, at the very least put Plaintiff on inquiry notice that VEB may have know about the suspension of payment prior to Plaintiff's shipment of the zippers but that VEB failed to disclose this to Plaintiff in a timely manner. *See Kline,* 87 Cal.App.4th at 1374, 105 Cal.Rptr.2d 699; *see also Echevarria,* 947 F.2d at 1397. The running of the statute of limitations does not require awareness of all the facts necessary to establish a claim for fraud, but only constructive knowledge of wrongdoing. *Kline,* 87 Cal.App.4th at 1374, 105 Cal. Rptr.2d 699.

The Court concludes that because the Plaintiff had inquiry notice by April, 1992, the three year statute of limitations under Cal.Code Civil Procedure § 338(d) began to run. During that three year period, Plaintiff failed to communicate with VEB, much less bring a cause of action. No correspondence between April 7, 1992 and September 14, 1995 is cited or alleged in the Complaint for more than three years after VEB's April 1992 letter. *See* Complaint, ¶¶ 11–13; *see also* Plaintiff's Supp. Brief, Exh 3. While Plaintiff's counsel suggested at the hearing that there may have been other communications between the parties which he could not yet document, he stated that he did not have a good faith basis for alleging any contact between 1992 and 1995. In any event, Plaintiff failed to bring suit within the limitations period which expired by April, 1995.

As to the alleged continuous scheme to mislead the Plaintiff after shipment of the zippers (Complaint, ¶ 36), as noted above, Plaintiff failed to allege any reliance on VEB's alleged misrepresentation that it would pay when funds were given by the Central Bank. Plaintiff does not allege, for instance, that it shipped additional zippers or changed its economic position in reliance. The only thing Plaintiff did in reliance was to defer bringing suit. Without reliance, this Court cannot recognize a cause of action for fraudulent misrepresentation:

> One who fraudulently makes a misrepresentation for the purpose of inducing another to act in reliance upon it is liable for the loss caused by the justifiable reliance on the misrepresentation .... The elements which the plaintiff must prove in order to recover on a claim of fraud include: (1) a misrepresentation, (2) knowledge of falsity, (3) intent to induce reliance, (4) justifiable reliance, and (5) resulting damage.

*Lincoln Alameda Creek v. Cooper Industries, Inc.,* 829 F.Supp. 325, 330 (N.D.Cal.1992)(citing the Restatement (2d) of Torts § 525 and *Cicone v. URS Corp.,* 183 Cal.App.3d 194, 200, 227 Cal.Rptr. 887 (1986)).

Likewise, Plaintiff has not and cannot make out a cause of action for negligent misrepresentation because reliance is lacking. *Glenn K. Jackson, Inc. v. Roe,* 273 F.3d 1192 (9th Cir.2001) (California law does not allow for recovery for negligent misrepresentation absent evidence of reasonable reliance).

At most, Plaintiff's reliance upon the conditional promise to pay in deferring suit might support a claim that the statute of limitations should be tolled. However, the facts alleged and documented by Plaintiff do not warrant equitable tolling of the statute of limitations, given Plaintiff's inac-

tion of several years and the absence of reasonable reliance or inducement. The well-established rule under California law is that ("fraud in concealing a cause of action against him tolls the applicable statute of limitations, but only for that period during which the claim is undiscovered by plaintiff or until such time as plaintiff, by the exercise of reasonable diligence, should have discovered it... This rule has been applied even in those cases in which there was imposed on a defendant a fiduciary duty of disclosure."). *Sanchez v. South Hoover Hospital,* 18 Cal.3d 93, 99, 132 Cal.Rptr. 657, 553 P.2d 1129 (1976) (citations omitted). *See also Nunez v. City of Los Angeles,* 147 F.3d 867, 871 n. 3 (9th Cir.1998) ("If a plaintiff has 'notice or information of circumstances to put a reasonable person on inquiry,' the statute runs.") (citing *Sanchez* ).

Plaintiff failed to exercise reasonable diligence during the nine year period preceding this suit. Plaintiff's situation contrasts sharply from fraud cases in which courts have permitted tolling of the statute of limitations. For example, in *Wyatt v. Union Mortgage Co.,* 24 Cal.3d 773, 788, 157 Cal.Rptr. 392, 598 P.2d 45 (1979), a civil conspiracy action against mortgage broker, the equities favored tolling when the defendant trapped plaintiff is a "financial treadmill" of additional fees and late charges and the "sheer economic duress or undue influence embedded in the fraud continue[d] to hold the victim in place." *Id.* at 788, 157 Cal.Rptr. 392, 598 P.2d 45.[5] In the instant case, however, Plaintiff was not so trapped; nothing prevented Plaintiff from filing suit to vindicate his rights after he was on inquiry notice regarding VEB's alleged fraud as of April, 1992. Plaintiff should have known that the post-January 30, 1992 correspondence would not be sufficient to constitute a binding and enforceable legal obligation by VEB in view of the UCP for the reasons discussed above. Moreover, even apart from the failure to comply with the UCP, there was no clear unconditional promise of payment on which Plaintiff could reasonably rely. The alleged promise was indefinite and had no end date for performance. Plaintiff's failure to act during the nine year period between 1992 and 2001 fails to establish tolling as a matter of law.

■ For the same reasons, the statute of limitations on Plaintiff's claims for intentional and negligent infliction of emotional distress has likewise run. At the time the original LOC expired, claims for infliction of emotional distress had a one year statute of limitations commencing from the event alleged to have caused the distress. *Maynard v. City of San Jose,* 37 F.3d 1396, 1406 (9th Cir.1994) (citing Cal. Code Civil Procedure § 340(3)).[6]

■ The Court additionally finds that Plaintiff has not and cannot make out a claim for intentional infliction of emotional distress ("IIED"). The elements for a claim of IIED include: (1) outrageous conduct by the defendant; (2) the defendant's intention of causing or reckless disregard of the probability of causing emotional distress; (3) the plaintiff's suffering severe or extreme emotional distress; and (4) actual and proximate causation of the emotional distress by the defendant's outrageous conduct. *Fletcher v. Western National Life Ins. Co.,* 10 Cal.App.3d 376,

---

**5.** *Wyatt* held that in cases involving civil conspiracy; the statute of limitations runs from the last overt act of the conspiracy. 24 Cal.3d at 786–87, 157 Cal.Rptr. 392, 598 P.2d 45. The Court reserved the question whether the doctrine would apply to a fraud acting by one person alone. *Id.* at 788, n. 5, 157 Cal.Rptr. 392, 598 P.2d 45.

**6.** In 2002, the statute of limitations was extended to two years. Cal.Code Civil Procedure § 335.1.

394, 89 Cal.Rptr. 78 (1970). Plaintiff argues that VEB's conduct in stringing Plaintiff along is comparably outrageous to the defendant in *Fletcher,* and is therefore actionable. Plaintiff's Opposition, at 12–13. VEB argue that its alleged conduct is not remotely similar to the kind of outrageous conduct that was actionable in *Fletcher.* Defendant's Reply, at 8–9.

In *Fletcher,* a manual laborer who was the father of seven minor children purchased disability insurance and subsequently had a serious back injury, surgery for a herniated disc, and was rendered permanently disabled. 10 Cal.App.3d at 386–87, 89 Cal.Rptr. 78. The defendant insurance company first started paying monthly benefits out of the sickness provision rather than the disability provision (which limited payment to two years rather than thirty years, a difference of $50,000). *Id.* at 387–88, 89 Cal.Rptr. 78. The company then falsely claimed that it had completed an intensive investigation which revealed that the plaintiff's back injury was due to a congenital back ailment which plaintiff should have disclosed when applying for the insurance policy. *Id.* at 389–90, 89 Cal.Rptr. 78. The defendant falsely accused the plaintiff of a material misrepresentation and demanded repayment under the policy. *Id.* at 390–91, 89 Cal.Rptr. 78. Defendant later acknowledged in a letter to plaintiff's attorney that in fact Plaintiff was unaware of having a congenital back condition, and defendant admitted that it had received no new information that led to its changed position. *Id.* at 391, 89 Cal.Rptr. 78. It was not until the eve of trial, more than two years since Plaintiff had been terminated after the injury, that defendant stipulated that plaintiff was entitled to continuing payments of $150 per month under the disability policy. *Id.* at 392, 89 Cal.Rptr. 78. The court found:

> [D]efendants, without probable cause for believing that plaintiff had made an in-tentional material misrepresentation or that his disability was due to anything other than his injury in January 1965, embarked upon a concerted course of conduct to induce plaintiff to surrender his insurance policy or enter into a disadvantageous "settlement" of a nonexistent dispute by means of false and threatening letters and the employment of economic pressure based upon his disabled and, therefore impecunious, condition, (the very thing insured against) exacerbated by Western National's malicious and bad faith refusal to pay plaintiff's legitimate claim.

*Id.* at 392, 89 Cal.Rptr. 78. On appeal, Defendant conceded that its actions were "deplorable" and "outrageous" and that its conduct led to plaintiff's family going without proper food and clothing, delinquent house payments, the loss of real property, the termination of electricity, and forcing his daughter to miss school on the days his wife worked. *Id.* at 392, 398, 89 Cal.Rptr. 78.

Plaintiff's argument regarding IIED fails because his claims pale in comparison to the Dickensian facts in *Fletcher.* The defendant in *Fletcher* engaged in an active and malicious campaign of false and threatening letters that exploited the plaintiff's disabled and "impecunious" position in order to strong arm favorable settlement terms. Here, there is no allegation that VEB engaged in anything approaching the admittedly "deplorable" and "outrageous" conduct committed by the defendant insurance company in *Fletcher.* The Plaintiff here was not in the same vulnerable position as the plaintiff in *Fletcher.* Nothing prevented the Plaintiff herein from exercising diligence in vindicating his rights under law. Accordingly, VEB is entitled to summary judgment regarding Plaintiff's claim for intentional infliction of emotional distress because Plaintiff would not be able to establish

that VEB's conduct was so extreme as to "exceed all bounds of that tolerated in a civilized community." *Cervantez v. J.C. Penney Co.*, 24 Cal.3d 579, 593, 156 Cal. Rptr. 198, 595 P.2d 975 (1979).

■ Regarding negligent infliction of emotional distress ("NIED"), VEB correctly points out that California law does not recognize a separate tort of NIED. Defendant's Motion, at 9–10. Rather, NIED is simply a form of negligence, and NIED claims must satisfy the traditional elements of duty, breach of duty, causation, and damages. *Burgess v. Superior Court*, 2 Cal.4th 1064, 1073, 9 Cal.Rptr.2d 615, 831 P.2d 1197 (1992); *Lawson v. Management Activities, Inc.*, 69 Cal. App.4th 652, 656, 81 Cal.Rptr.2d 745 (1999); Witkin, 6 Summary of Cal. Law § 838 (2003 Supplement). The unavailability of any fraud claim herein, leaves Plaintiff with a breach of contract claim only. He fails to state a claim in tort.

■ Finally, any claim for emotional distress is further barred because such claims are generally not available where the alleged wrongdoing results only in economic injury to the plaintiff. *See Erlich v. Menezes*, 21 Cal.4th 543, 555, 87 Cal.Rptr.2d 886, 981 P.2d 978 (1999) ("No California case has allowed recovery for emotional distress arising solely out of property damage; moreover, a preexisting contractual relationship, without more, will not support a recovery for mental suffering where the defendant's tortious conduct has resulted only in economic injury to the plaintiff."); *Potter v. Firestone Tire & Rubber Co.*, 6 Cal.4th 965, 985, 25 Cal. Rptr.2d 550, 863 P.2d 795 (1993) ("[W]ith rare exceptions, a breach of the duty must threaten physical injury, not simply damage to property or financial interest.").[7]

---

7. Emotional distress damages are not recoverable for breach of contract except where the express object of the contract is the mental and emotional well-being of one of the con-

## IV. CONCLUSION

For the reasons stated above, the Court hereby grants summary judgment in favor of Defendant on all claims.

IT IS SO ORDERED.

tracting parties such as an agreement to keep burial service private. *Erlich, supra,* 21 Cal.4th at 559, 87 Cal.Rptr.2d 886, 981 P.2d 978.