CENTAUR CLASSIC CONVERTIBLE ARBITRAGE FUND LTD., et al., Plaintiffs,

v.

COUNTRYWIDE FINANCIAL CORPORATION, et al., Defendants.

Case No. 2:10–CV–05699 MRP.

United States District Court, C.D. California.

June 21, 2011.

**1141**

Andrew J. Entwistle, Arthur V. Nealon, Jonathan H. Beemer, Joshua K. Porter,

Robert N. Cappuci, William S. Gyves, Entwistle and Cappucci LLP, New York, NY, Marc M. Seltzer, Susman Godfrey LLP, Los Angeles, CA, for Plaintiffs.

Lloyd Winawer, Goodwin Procter LLP, David Siegel, Benedetto L. Balding, Craig Varnen, Daniel P. Lefler, Eric J. Carsten, Iian Daniel Jablon, Irell & Manella LLP, Michael C. Tu, Orrick Herrington and Sutcliffe LLP, Los Angeles, CA, Brian Charles Devine, Brian E. Pastuszenski, John O. Farley, Goodwin Procter LLP, Boston, MA, David A. Priebe, Rajiv S. Dharnidharka, DLA Piper LLP U.S., East Palo Alto, CA, for Defendants.

**ORDER RE: DEFENDANTS' MOTIONS TO DISMISS SECOND AMENDED COMPLAINT**

MARIANA R. PFAELZER, District Judge.

**I. INTRODUCTION & BACKGROUND**

This securities action was brought by eight institutional affiliates of Argent Classic Convertible Arbitrage Fund, the lead plaintiff in the putative class action *Argent Classic Conv. Arb. Fund v. Countrywide Fin. Corp. et al.,* No. 07–cv–07097–MRP (MANx) ("*Argent*"), along with 38 other sophisticated institutional investors. The initial complaint alleged six causes of action, two under the Securities Exchange Act of 1934 and four state law claims. The lawsuit was filed in the wake of this Court's denial of class certification in *Argent,* and the federal securities law claims were tolled during the pendency of *Argent* under the doctrine of *American Pipe.*[1] *See* 1/20/2011 Order (ECF No. 57) at 6.

---

1. *American Pipe & Construction Co. v. Utah,* 414 U.S. 538, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974).

The institutional plaintiffs here claim to have purchased unregistered, privately-placed Series A and Series B Floating Rate Convertible Senior Debentures Due 2037 (the "Debentures"), issued by Countrywide, at various points during the six months between the Debentures' initial offering on May 16, 2007 and November 21, 2007, which Plaintiffs define as the "Relevant Period." Compl. (ECF No. 1) at 3:17–21. The Debentures were senior unsecured obligations of Countrywide and were sold pursuant to an Offering Memorandum to qualified institutional buyers ("QIBs") under Securities Exchange Commission ("SEC") Rule 144A.[2] Second Amended Complaint ("SAC") ¶ 371. The Debentures had conversion rights, which made them convertible into Countrywide common stock contingent on certain events prior to maturity. SAC ¶ 375. The Offering Memorandum stated that the proceeds received from the Offering, which were estimated at approximately $3.96 billion after expenses, would be used to repurchase approximately $863 million of Countrywide's common stock, as well as for general corporate purposes. SAC ¶ 372.

The suit is brought against Countrywide Financial Corporation ("Countrywide") and its former senior executives, officers and directors: Angelo R. Mozilo, Eric P. Sieracki and David Sambol (collectively, the "Individual Defendants"). Plaintiffs allege that the Offering Memorandum, which incorporated by reference certain documents Countrywide filed with the SEC, contained materially false and mis-leading statements and omissions of mate-rial fact concerning Countrywide's lending and underwriting practices prior to and throughout the Relevant Period and mis-stated Countrywide's financial position. SAC ¶ 378. Plaintiffs allege they there-fore purchased the Debentures at artifi-cially inflated prices during the Relevant Period, after which the prices of the De-bentures fell precipitously, causing Plain-tiffs to sustain significant damages. SAC ¶¶ 378–79.

The Court dismissed the initial com-plaint in its entirety. 1/20/2011 Order. The Court ruled that the statute of limita-tions barred the pursuit of the state law claims in federal court and dismissed those claims with prejudice. See id. at 5–14. The Court dismissed the federal securities claims without prejudice for Plaintiffs' fail-ure to specify the material circumstances of each Plaintiff's claim, including not al-leging any facts regarding the dates or the amounts of Plaintiffs' securities purchases and sales or the statements upon which Plaintiffs allegedly relied.

Plaintiffs filed a First Amended Com-plaint on February 22, 2011 (ECF No. 66) and their Second Amended Complaint ("SAC") two days later (ECF No. 67).[3] The SAC asserts two claims under the Securities Exchange Act of 1934. The first claim is for violation of § 10(b) and Rule 10b–5 promulgated thereunder (Count I). The second claim is for viola-tion of § 20(a) (Count II) and is brought against the Individual Defendants only. The Court finds Plaintiffs have complied with Federal Rule of Civil Procedure 9(b), the Private Securities Litigation Reform Act ("PSLRA") and this Court's 1/20/2011

---

**2.** QIBs are defined by SEC Rule 144A and include institutional investors that in the ag-gregate own or invest on a discretionary basis at least $100 million in securities and bro-ker/dealers that in the aggregate own or in-vest on a discretionary basis at least $10 million in securities. See 17 C.F.R. § 230.144A.

**3.** The SAC, which is the operative complaint, was filed by 43 of the original 46 institutional investor plaintiffs, plus two new plaintiffs: Sandelman Partners Multistrategy Master Fund Ltd. and Sandelman Partners Opportu-nity Master Fund L.P.

Order. Plaintiffs have pleaded with particularity the details of their securities transactions. The SAC contains the necessary facts regarding the dates and amount of Plaintiffs' alleged purchases and sales of the Debentures. In addition, Plaintiffs have submitted the details of "all relevant purchases and sales by Plaintiffs in Countrywide common stock" during the Relevant Period as well as each Plaintiff's post-Relevant Period common stock transactions "through the date that individual Plaintiff sold its Debentures purchased during the Relevant Period." Plaintiffs' Opposition Brief (ECF No. 84) at 15; Plaintiffs' Supplemental Submission of Common Stock Transactions (ECF No. 88). Moreover, the SAC sufficiently sets forth the statements (misstatements or omissions) upon which Plaintiffs allegedly relied in entering into these transactions.

## II. DISCUSSION

■ Defendants moved to dismiss the SAC on multiple bases, including failure to plead adequately: material misstatements or omissions, loss causation, reliance, damages, and scienter on the part of Sieracki and Sambol.[4] As it must, the Court assumes the Plaintiffs' allegations in the SAC are true and draws all reasonable inferences in Plaintiffs' favor. *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir.1987). To prove their Section 10(b) fraud claims, and the dependent Section 20(a) claims, Plaintiffs will have to prove "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *Stoneridge Inv.*

*Partners, LLC v. Scientific–Atlanta*, 552 U.S. 148, 157, 128 S.Ct. 761, 169 L.Ed.2d 627 (2008). This certainly will be a difficult case to prove considering the identity of the Plaintiffs, but Plaintiffs do not have to prove their case at the motion to dismiss stage. As the Court explained in its prior Order, all the Plaintiffs have to do is plead enough facts—including identifying their transactions, the misrepresentations relied upon when engaging in the transactions, and the damages suffered as a result—to "ensure that defendants accused of the conduct specified have adequate notice of what they are alleged to have done, so that they may defend against the accusations." *Concha v. London*, 62 F.3d 1493, 1502 (9th Cir.1995); *see* 01/20/11 Order at 14–16. Plaintiffs have met this burden.

Defendants make several strong arguments with respect to the merits of this case.[5] However, Defendants' arguments regarding economic loss, loss causation and reliance, appear to depend mainly on determinations of fact that are not appropriate at the motion to dismiss stage.

■ *Economic Loss.* First, Defendants argue that eleven individual plaintiffs have suffered no damages because they employed a trading strategy, including short-selling Countrywide common stock, that netted them a profit. The Court agrees with Defendants that it is appropriate to measure damages by netting the gains and losses from a Plaintiff's "ongoing trading strategy," and to find a Plaintiff was not injured if the strategy netted a profit. *Rocker Mgmt., LLC v. Lernout & Hauspie Speech Prods. N.V.*, No. 00–5695(PGS), 2007 WL 2814653, *14–15 (D.N.J. Sept. 24, 2007). *See also Black-*

4. The Individual Defendants join in Countrywide's motion (ECF Nos. 75, 79, 80).

5. For the reasons explicated by Countrywide in its Reply Brief, the Court rejects Plaintiffs'

argument that certain of Defendants' arguments are barred by Federal Rule of Procedure 12(g).

*ie v. Barrack*, 524 F.2d 891, 908–11 (9th Cir.1975); Samuel Francis, Note, *Meet Two–Face: The Dualistic Rule 10b–5 and the Quandary of Offsetting Losses by Gains*, 77 FORDHAM L.REV. 3045, 3065–68 (2009) (citing *Blackie* and stating the Ninth Circuit has traditionally taken the netting approach that offsets gains and losses stemming from different transactions). However, the netting of each Plaintiff's gains and losses is a detailed inquiry which the Court is unable to undertake at this stage of the litigation. A number of fact-sensitive issues probably include: what constitutes each Plaintiff's "ongoing trading strategy," which transactions should be netted, and what is the appropriate methodology for determining gains and losses.

■■■■ *Loss Causation.* Loss causation is the causal connection between a defendant's material misrepresentation and a plaintiff's loss. *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 344–45, 125 S.Ct. 1627, 161 L.Ed.2d 577 (2005). "Loss causation is established if the market learns of a defendant's fraudulent act or practice, the market reacts to the fraudulent act or practice, and a plaintiff suffers a loss as a result of the market's reaction." *In re Oracle Corp. Secs. Litig.*, 627 F.3d 376, 392 (9th Cir.2010). Plaintiffs must plead that the value of their investment fell significantly after the truth became known about the Defendants' acts or practices—regardless of whether the market had yet concluded those practices were fraudulent—as opposed to Countrywide's financial health

generally or the health of the industry. *Id.*

■■■■ Plaintiffs allege that as Countrywide began to make corrective disclosures, the market gradually came to recognize that Countrywide had made false statements, and the prices of the Debentures dropped in value as a direct result. Defendants argue that there is no connection between the Debentures' price movement and Countrywide's alleged corrective disclosures.[6] Defendants ask the Court to take judicial notice of the residential real estate market and subprime mortgage industry collapse, which they contend caused the Debentures to drop in value, not any alleged fraud. Defendants rely on *Oracle* and *In re Nuveen Funds*.[7] In *Oracle*, the Ninth Circuit held that a plaintiff cannot rely on the "impact" of a fraudulent act or practice as the cause of its loss; the market must react to disclosure of the fraudulent act itself. *Oracle*, 627 F.3d at 392. According to Defendants, Plaintiffs' theory that the market "materialized" the fraud is tantamount to alleging that Plaintiffs' losses were a result of the impact of Defendants' alleged fraud on the secondary mortgage market and the economy more broadly, rather than as a direct result of the corrective disclosures themselves.

The Court finds Plaintiffs have adequately pleaded loss causation. Whether or not Plaintiffs can prove that the alleged corrective disclosures caused the drop in the Debentures' value, as opposed to macroeconomic events, is a factual question that cannot be resolved at the motion to

---

**6.** Defendants present examples where Debenture prices rose during the day of the corrective disclosure or where prices were already declining, even before the disclosure. They claim these examples thwart Plaintiffs' theory. Plaintiffs respond by explaining, for instance, that on some of those occasions the corrective disclosure occurred near the end of the day and the market did not have time to absorb

and process the information quickly enough to effect that day's trading. Compare Defendants' Motion to Dismiss, Appendix C, to Plaintiffs' Opposition Brief, Exhibit D. These are fact issues.

**7.** *In re Nuveen Funds/City of Alameda Secs. Litig.*, Nos. C 08–4575 SI, C 09–1437 SI, 2011 WL 1842819 (N.D.Cal. May 16, 2011).

dismiss stage. Defendants' reliance on *Oracle* and *Nuveen*, both of which addressed loss causation at the summary judgment stage after the presentation of expert testimony, only underscores the necessity that a factual record be developed. The Court will not conclude that Plaintiffs cannot prove loss causation until Plaintiffs have had the opportunity to present further evidence on the issue. *See In re Gilead Sci. Sec. Litig.*, 536 F.3d 1049, 1057 (9th Cir.2008).

■ *Reliance.* Defendants insist that any purchases of Debentures on or after July 24, 2007 are not supported by reasonable reliance because on that date, according to the SAC, the investor call disclosed that information Countrywide had previously provided to the market was false or misleadingly incomplete. Although Defendants deny that they are arguing "truth on the market," Defendants are contending that Plaintiffs could not have reasonably relied on any alleged misstatements after that time because the truth about Countrywide's practices was already in the public arena.[8] Defendants claim also that Plaintiffs' purchases were part of a carefully calculated trading strategy, a strategy which Plaintiffs claim Defendants have completely mischaracterized.

Plaintiffs allege that the corrective disclosures occurred gradually in the form of partial disclosures over the course of several months, and were accompanied by further material misrepresentations and omissions within that same document. *See* Plaintiffs' Opposition Brief, Appendix C. Plaintiffs claim to have actually relied on these continuing misrepresentations and

have set forth in the SAC which statements they relied on for each purchase.[9] Each Plaintiff alleges it would not have purchased the Debentures had it known the statements by Defendants upon which it relied were false and misleading.[10] Whether Plaintiffs did or did not actually rely on Countrywide's misstatements—and whether the partial corrective disclosures sufficiently counterbalanced those statements such that reliance was not reasonable—or whether Plaintiffs' purchases were based instead on a separate trading strategy are all questions of fact that cannot be determined at this motion stage. Plaintiffs have met their burden of pleading actual reliance.

■ *Scienter.* To state a '34 Act claim, a pleading must allege with "particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u–4(b)(2). A strong inference is one that is more than plausible; "it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 314, 127 S.Ct. 2499, 168 L.Ed.2d 179 (2007). The Court concludes Plaintiffs have adequately pleaded the scienter of all the Defendants.

■ The Court agrees with Defendant Sambol that group pleading is not permissible, but concludes that Plaintiffs are not relying on group pleading here. Although the SAC does contain two paragraphs characterized as group pleading allegations, SAC ¶¶ 822, 823, the SAC contains sufficient individualized allegations of

8. Defendant Mozilo emphasizes this argument in his brief joining Countrywide's motion to dismiss (ECF No. 80).

9. SAC ¶¶ 40, 45, 50, 54, 59, 63, 67, 74, 78, 82, 89, 95, 99, 103, 107, 114, 120, 126, 130, 134, 138, 142, 149, 155, 161, 165, 169, 173, 177, 184, 190, 198, 202, 209, 215, 221, 225, 232, 239, 246, 250, 257, 263, 267; Exhibits A–T; Plaintiffs' Opposition Brief, Appendix B.

10. *E.g.*, SAC ¶¶ 70, 85, 91, 110, 116, 122, 145, 151, 157, 180, 186, 205, 211, 217, 228, 235, 242, 253, 259, 274.

scienter to support Plaintiffs' claims under the PSLRA. The SAC does rely in part on position-based inferences, which Defendant Sambol argues is impermissible. The Court disagrees. This Court has recognized that general awareness of the day-to-day workings of a company's business does not establish scienter. *In re Countrywide Fin. Corp. Secs. Litig.*, 588 F.Supp.2d 1132, 1189 (C.D.Cal.2008). However, if after looking to the complaint as a whole and considering the totality of circumstances, plaintiffs are able to bridge the gap between a defendant's mere access to information and an inference of knowledge, scienter is adequately pleaded under the PSLRA. *South Ferry LP, No. 2 v. Killinger*, 542 F.3d 776, 783–84 (9th Cir.2008); *id.* at 1191. "Allegations that rely on the core-operations inference are among the allegations that may be considered in the complete PSLRA analysis." *South Ferry*, 542 F.3d at 784.

 Defendants Sambol and Sieracki's assertions that Plaintiffs rely solely on their positions at Countrywide and their access to information as the source of Plaintiffs' inferences of scienter are off the mark.[11] Plaintiffs have numerous detailed allegations of e-mails, meetings, and other evidence showing Sieracki and Sambol were acutely aware that Countrywide was violating its own underwriting guidelines, improperly characterizing its "prime loans" and that its purportedly "high quality investment portfolio" in fact had a substantial risk of "unexpected losses." *See, e.g.,* SAC ¶¶ 685–709. Viewing the complaint holistically, and considering also judicially noticeable facts,[12] the Court has evaluated the competing inferences that can be drawn from the allegations and concluded there is a strong inference of "knowing or intentional conduct." *See In re Countrywide Fin. Corp. Secs. Litig.*, 588 F.Supp.2d at 1185.

*Material Misrepresentations and Omissions.* The PSLRA requires that the complaint must explain why the statement is false and misleading and, if alleged on information and belief, the complaint must "state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u–4(b)(1). Plaintiffs have satisfied this standard. The SAC sets forth in painstaking detail the misrepresentations and omissions upon which Plaintiffs relied and why each statement is false and misleading.

---

11. The Ninth Circuit permits a plaintiff to rely *only* upon the core-operations inference "in some unusual circumstances." *South Ferry*, 542 F.3d at 785. For example, allegations regarding management's role in a company may help satisfy the PSLRA scienter requirement "where the nature of the relevant fact is of such prominence that it would be 'absurd' to suggest that management was without knowledge of the matter." *Id.* at 786. Plaintiffs do not rely solely upon the core-operations inference here, they have alleged specific factual details against the individual defendants.

12. Pursuant to Federal Rule of Evidence 201, the Court GRANTS the request for judicial notice filed by David Sambol (ECF No. 77) and both requests for judicial notice filed by Countrywide (ECF Nos. 78-2, 96-2). With respect to Plaintiffs' request for judicial notice (ECF No. 85), the Court DENIES the request for Exhibits 1–9 and 65 because they are public news articles which were not referenced in the SAC. The Court DENIES the request with respect to the documents submitted in an entirely separate litigation, *SEC v. Mozilo*, No. CV 09–3994–JFW (MANx), 2010 WL 3656068 (C.D.Cal.), which are not referenced in the SAC and are not official court records or orders: Exhibits 11–14, 16–20, 22, 26, 29–33, 35, 37, 43, 48, 50–51, 53–58. The Court GRANTS Plaintiffs' request for judicial notice of the remaining Exhibits. Exhibit 10 is a court order and Exhibits 59–64 are public disclosure documents required to be filed with the SEC. Exhibits 15, 21, 23–25, 27–28, 34, 36, 38–42, 44–45, 47, 49, 52, 60–61 are proper for judicial notice because they are referenced in the SAC and no party doubts their authenticity.

The Court finds no merit in Defendants' arguments to the contrary.

### III. CONCLUSION

Defendants' motions to dismiss are denied. In accordance with Federal Rule of Civil Procedure 12(a)(4)(A), Defendants must answer the SAC within fourteen days after they receive notice of this Order. The parties are ORDERED to meet and confer regarding the next appropriate steps in this litigation and file a joint status report and proposed schedule within 21 days of this Order's filing date.

**IT IS SO ORDERED.**