**STICHTING PENSIOENFONDS ABP, Plaintiff,**

v.

**COUNTRYWIDE FINANCIAL CORPORATION, et al., Defendants.**

**Case No. 10–CV–07275 MRP (MANx).**

United States District Court, C.D. California.

Aug. 9, 2011.

& Collins PC, Los Angeles, CA, for Plaintiff.

Brian Charles Devine, Brian E. Pastuszenski, Caroline H. Bullerjahn, Inez H. Friedman–Boyce, Goodwin Procter LLP, Boston, MA, Lloyd Winawer, Goodwin Procter LLP, Matthew W. Close, Matthew Christian HIPP, O'Melveny And Myers, Alexander K. Mircheff, Dean J. Kitchens, Gibson Dunn and Crutcher LLP, David C. Codell, Christopher G. Caldwell, Caldwell Leslie & Proctor P.C., Jennifer M. Sepic, Bingham McCutchen LLP, Nicolas Morgan, DLA Piper LLP, Joshua G. Hamilton, Peter Young Hoon Cho, William F. Sullivan, Paul Hastings LLP, Michael C. Tu, Orrick Herrington and Sutcliffe LLP, David Siegel, Holly L. Gershow, Irell & Manella LLP, Los Angeles, CA, Jonathan Rosenberg, William J. Sushon, O'Melveny & Myers LLP, New York, NY, Leiv H. Blad, Jr., Bingham McCutchen LLP, Washington, DC, David A. Priebe, Jeffrey B. Coopersmith, Rajiv S. Dharnidharka, DLA Piper LLP, East Palo Alto, CA, Shirli Fabbri Weiss, DLA Piper LLP, San Diego, CA, Matthew A. Ashley, Allison Lauren Libeu, Irell & Manella, Newport Beach, CA, for Defendants.

## ORDER RE MOTIONS TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

MARIANA R. PFAELZER, District Judge.

### I. INTRODUCTION & BACKGROUND

This securities action concerns residential mortgage-backed securities ("RMBS") purchased by Plaintiff Stichting Pensioenfonds ABP ("Plaintiff") in fifteen different offerings structured and sold by almost two dozen defendants. The various defendants are referred to as the Countrywide

Deborah A. Elman, Hung G. Ta, Jay W. Eisenhofer, Grant & Eisenhofer PA, New York, NY, Geoffrey C. Jarvis, Grant & Eisenhofer PA, Wilmington, DE, Maryann R. Marzano, Maxwell M. Blecher, Blecher

Defendants,[1] the Individual Defendants,[2] the Underwriter Defendants,[3] and the Bank of America Defendants.[4] Plaintiff filed its original complaint (the "Original Complaint") in Los Angeles Superior Court on August 18, 2010. Notice of Removal, ECF No. 1. That complaint alleged violations of §§ 11, 12(a)(2), and 15 of the Securities Act of 1933 and two California state law claims. Defendants removed the case to federal court, and Plaintiff filed a First Amended Complaint (the "FAC") on February 14, 2011. The FAC is now the operative complaint in this matter. In addition to providing somewhat greater detail, the FAC added claims that various defendants violated §§ 10(b) and 20(a) of the Exchange Act of 1934 together with three additional state law claims.

All of the defendants (collectively, "Defendants") moved to dismiss the FAC on a multiplicity of grounds. The issues have been fully briefed and the Court heard extensive oral argument on July 13, 2011. After careful consideration, the Court decides as follows:

Counts VI, VII, and VIII are barred by the statute of repose unless Plaintiff can adequately allege that its claims have been tolled. Plaintiff has yet to do so, and therefore Counts VI, VII, and VIII are **DISMISSED WITHOUT PREJUDICE** as to **ALL DEFENDANTS**. Plaintiff has leave to amend subject to the restrictions discussed below. Counts I, II, V, IX, and X are time-barred under the applicable two-year statutes of limitations. Counts I, II, V, IX, and X are therefore **DISMISSED WITH PREJUDICE** as to **ALL DEFENDANTS**. Counts III and IV are time-barred under the applicable three-year statute of limitations. Counts III and IV are therefore **DISMISSED WITH PREJUDICE** as to **ALL DEFENDANTS**.

## II. MOTION TO DISMISS STANDARD

A Rule 12(b)(6) motion to dismiss should be granted when, assuming the truth of the plaintiff's allegations, the complaint fails to state a claim for which relief can be granted. *See Epstein v. Washington Energy Co.*, 83 F.3d 1136, 1140 (9th Cir.1996). In deciding whether the plaintiff has stated a claim, the Court must assume the plaintiff's allegations are true and draw all reasonable inferences in the plaintiff's favor. *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir.1987). However, the Court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008). A court reads the complaint as a whole, together with matters appropriate for judicial notice, rather than isolating allegations and taking them out of context. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 127 S.Ct. 2499, 168 L.Ed.2d 179 (2007).

1. The Countrywide Defendants consist of: Countrywide Financial Corporation ("CFC"); Countrywide Home Loans, Inc. ("CHL"); CWALT, Inc.; CWMBS, Inc.; CWABS, Inc.; CWHEQ, Inc.; Countrywide Capital Markets ("CCM"); Countrywide Securities Corporation ("CSC"); and N. Joshua Adler.

2. The Individual Defendants consist of: Angelo R. Mozilo, Stanford L. Kurland, David A. Spector, Eric P. Sieracki, Ranjit Kripalani, Jennifer S. Sandefur, and David A. Sambol.

3. The Underwriter Defendants consist of: Deutsche Bank Securities Inc., UBS Securities, LLC, Greenwich Capital Markets, Inc. a.k.a. RBS Greenwich Capital, and Barclays Capital Inc.

4. The Bank of America Defendants consist of: Bank of America Corp. and NB Holdings Corp.

## III. DISCUSSION

### A. Plaintiff's Section 11 and 12(A)(2) Claims

 Section 13 of the Securities Act of 1933 provides a one-year statute of limitations and a three-year statute of repose for all claims brought under Sections 11 and 12(a)(2) of that Act. 15 U.S.C. § 77m. "Although the distinction between statutes of limitations and statutes of repose is often blurred, statutes of limitations differ from statutes of repose because the former 'bars plaintiff[s] from bringing an already accrued claim after a specified period of time,' whereas the latter 'terminates a right of action after a specific time, even if the injury has not yet occurred.'" *Fields v. Legacy Health Sys.*, 413 F.3d 943, 952 n. 7 (9th Cir.2005) (citation omitted). The Court has decided this issue based solely on the statute of repose, and therefore reserves judgment on the statute of limitations and other arguments raised by the parties.

The statute of repose for a § 11 claim begins to run on the date that the security was "bona fide offered to the public." 15 U.S.C. § 77m. The statute of repose for a § 12(a)(2) claim begins to run on the date "of the sale." *Id.* The fifteen offerings at issue in this case issued between 2004 and 2007. Pl.'s Opp. to Countrywide's Mtn. to Dismiss at 11, ECF No. 109. ("Opp"). Plaintiff purchased the fifteen offerings between December 3, 2004 and June 29, 2007, *id.,* and the purchasing memoranda were issued between November 22, 2004 and July 3, 2007. Countrywide Defs' Mtn. to Dismiss Exs. 3–19, ECF No. 97. The original complaint in this action was filed on August 16, 2010, more than three years after Plaintiff purchased the last of the certificates at issue. Notice of Removal, ECF No. 1. Therefore, Plaintiff's §§ 11 and 12(a)(2) claims are barred by the statute of repose unless Plaintiff properly asserts that its claims were tolled.

Neither the original complaint nor the FAC asserts any basis for tolling,[5] while Plaintiff's papers assert that the §§ 11 and 12(a)(2) claims are tolled by the filing of two putative class action complaints known collectively as *Luther.*[6] Opp. at 120–25. In another Countrywide case, this Court held that the *Luther* complaints only toll claims for certificates which the named plaintiffs in *Luther* had purchased. *Maine State Ret. Sys. v. Countrywide Fin. Corp.,* 722 F.Supp.2d 1157, 1161–62 (C.D.Cal. 2010). This Court later made clear that its ruling was tracheae-specific, i.e. that the named plaintiff in *Luther* must have purchased the same certificate, in the same tracheae, to toll a claim under *American Pipe. Maine State Ret. Sys. v. Countrywide Fin. Corp.,* No. 2:10–CV–0302 MRP (MANx) ECF No. 257, 2011 WL 4389689 (C.D.Cal. May 5, 2011). The reasons for those rulings are fully laid-out in the *Maine State* decisions, and the Court adopts them here.

---

**5.** As Defendants correctly point out, this is sufficient basis to require Plaintiff to replead under this Court's decisions in the *Maine State* case. Countrywide Defs' Reply at 5; *Me. State Ret. Sys. v. Countrywide Fin. Corp.,* 722 F.Supp.2d 1157, 1167–68 (C.D.Cal.2010) (*"Maine State 1 "*). However, Plaintiff's opposition brief asserts tolling on the basis of the Supreme Court's decision in *American Pipe.* Opp. at 120–25; *American Pipe and Construction Co. v. Utah,* 414 U.S. 538, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974). To avoid repetitive motion practice, this Order proceeds as if Plaintiff had properly alleged tolling in the FAC.

**6.** *Luther v. Countrywide Home Loans Servicing LP,* No. BC 380698 (Cal.Super.Ct. Nov. 14, 2007); *Washington State Plumbing and Pipefitting Pension Fund Trust v. Countrywide Fin. Corp., et al.,* No. BC 392571 (Cal.Super. Ct. June 12, 2008). The actions were later consolidated into one action, referred to here as *Luther.*

Plaintiff may only assert tolling with respect to trenches of securities that the named *Luther* plaintiffs purchased. Defendants contend that two of the offerings asserted by Plaintiff were owned by the *Luther* plaintiffs but that both are time-barred for different reasons. Countrywide Defs' Reply at 6. Plaintiff contends that four of the offerings were "included" in the various *Luther* complaints and therefore withstand scrutiny. Opp. at 125. Plaintiff does not, however, adequately trace those securities to a *Luther* plaintiff. Rather than speculate, the Court rules as follows: The Court **GRANTS** Defendants' motions to dismiss Plaintiff's §§ 11 and 12(a)(2) claims as time-barred under the statute of repose with respect to **ALL DEFENDANTS.** Plaintiff has leave to amend its complaint in light of this ruling. If Plaintiff amends, it must include the following information for each security for which it asserts a §§ 11 or 12(a)(2) claim: the date that the prospectus issued; the date that Plaintiff purchased the security; the tracheae of the security that Plaintiff purchased; from whom or on what market Plaintiff purchased the security; the grounds for asserting that a *Luther* plaintiff also purchased the security; the tracheae of the security that the *Luther* plaintiff purchased; and the date on which that *Luther* plaintiff joined the *Luther* case. Plaintiff may not assert §§ 11 or 12(a)(2) claims for any certificate which a *Luther* plaintiff did not purchase, nor for any certificate for which the three-year statute of repose expired before the *Luther* plaintiff either acquired the security or joined the *Luther* case. The Court **DECLINES TO RULE** on the various defendants' other arguments with respect to the §§ 11 and 12(a)(2) claims at this time. If Plaintiff elects to re-plead the Court will consider the parties' arguments at that time.

## B. PLAINTIFF'S SECTION 15 CLAIMS

 The FAC asserts claims against the Individual Defendants and the Countrywide Defendants under § 15 of the Securities Act of 1933. FAC at ¶¶ 291–95. Section 15 is a control person liability statute. The only remedy available under § 15 is joint and several liability for the underlying claim under §§ 11 or 12(a)(2). 15 U.S.C. § 77o. It therefore follows that a plaintiff may not sustain a § 15 claim without first adequately pleading a §§ 11 or 12(a)(2) claim as the underlying violation. *Wiley v. Hughes Capital Corp.,* 746 F.Supp. 1264, 1277 (D.N.J.1990) ("Liability of a controlling person under Section 15 of the 1933 Act is derivative of [primary liability] and the limitations period is therefore the same."). The Court has dismissed Plaintiff's §§ 11 and 12(a)(2) claims, and Plaintiff has made no other allegations which could serve as the basis for a § 15 claim. The Court therefore **GRANTS** Defendants' motions to dismiss Plaintiff's § 15 claims with respect to **ALL DEFENDANTS.** Plaintiff has leave to amend, but the Court will only entertain a § 15 claim with respect to those offerings for which Plaintiff makes a sufficient showing that the statute of repose has been tolled. The Court **DECLINES TO RULE** on the various defendants' other arguments with respect to the § 15 claims at this time. If Plaintiff elects to re-plead the Court will consider the parties' arguments at that time.

## C. PLAINTIFF'S SECTION 10(B) CLAIMS

In addition to the Securities Act claims discussed in Sections III.A and III.B above, Plaintiff has asserted two causes of action under the Exchange Act of 1934. FAC at ¶¶ 237–252. The Sarbanes–Oxley Act of 2002 amended the Exchange Act to make clear that an action under Rule 10(b) is subject to a two-year statute of limita-

tions and a five-year statute of repose. 28 U.S.C. § 1658(b). The Court considers these limitations periods separately. Before reaching either issue, however, the Court must determine whether Plaintiff's § 10(b) claims "relate back" to the Original Complaint. If they do, then the statutes are measured from August 18, 2010. If not, they will be measured from February 14, 2011. Plaintiff agrees that the relation back doctrine does not apply to Mozilo or CWABS 2007–11. Supp. Opp. at n. 3, ECF No. 132.

### 1. Relation Back—Waiver

 Plaintiff, first in a letter to the Court on July 20, 2011 (a week after the Court had heard oral argument on the fully briefed motions to dismiss) and later in a supplemental brief, urges that its fraud-based claims (first raised in the FAC) relate back to the filing date of the Original Complaint for limitations and repose purposes. Neither the FAC nor Plaintiff's Opposition to the various motions to dismiss raised the relation back issue. On the contrary, the Opposition stated that February 9, 2011 was the operative date for Plaintiff's fraud-based claims.[7] In granting Plaintiff's request for additional briefing, the Court ordered that the Plaintiff explain "why it is appropriate for the Court to consider Plaintiff's argument at this stage of the proceedings." Plaintiff failed to provide any reason why the Court should allow it to change its position at this late state of the proceedings. Relation back is not, as Plaintiff alleges, an issue that was not "fully briefed." It is an issue that Plaintiff never briefed or argued at all. Defendants raised the issue of relation back in their papers, and Plaintiff seemed to agree with Defendants that February 2011 was the operative date for Plaintiff's fraud claims.

 As Defendants point out, "[i]n most circumstances, failure to respond in an opposition brief to an argument put forward in an opening brief constitutes waiver or abandonment in regard to the uncontested issue." *Sportscare of America, P.C. v. Multiplan, Inc.*, No. 2:10–4414, 2011 WL 589955, at *1 (D.N.J. Feb. 10, 2011). *Accord Jenkins v. County of Riverside*, 398 F.3d 1093, 1095 n. 4 (9th Cir.2005) (plaintiff abandoned claims by not raising them in opposition to motion for summary judgment); *Scott v. City of Phoenix*, No. CV–09–0875–PHX–JAT, 2011 WL 3159166, at *10 (D.Ariz. Jul. 26, 2011) (failure to oppose statute of limitations argument constituted waiver); *Foster v. City of Fresno*, 392 F.Supp.2d 1140, 1147 n. 7 (E.D.Cal. 2005) ("At any rate, failure of a party to address a claim in an opposition to a motion for summary judgment may constitute a waiver of that claim.").

Plaintiff provides no justification for changing its legal position after the parties had fully briefed and argued the motions to dismiss. Nor does Plaintiff provide any explanation as to why it violated Local Rule 7–9 (requiring a memorandum containing "all the reasons in opposition" to a motion to dismiss within 21 days) or the Court's explicit order to explain why Plaintiff should be permitted to advance a new argument at this late date. Plaintiff supplied no justification and the Court sees none. Accordingly, the Court finds that Plaintiff has waived any argument with respect to relation back. The threshold date is February 14, 2011 for Plaintiff's fraud-based claims.

### 2. Relation Back—Merits

 As an alternative basis for its holding in Section III.C.1 above, the Court briefly considers the merits of Plaintiff's

---

7. This date appears to be incorrect. The Court believes that February 14, 2011 is the correct filing date of the FAC. *See infra* note 10.

relation back argument. Under Rule 15(c)(1)(B), an amended complaint relates back to the date of an earlier pleading when "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Fed.R.Civ.P. 15(c)(1)(B).

■■■■ "When a plaintiff seeks to amend a complaint to state a new claim against an original defendant ... the district court ... compares the original complaint with the amended complaint and decides whether the claim to be added will likely be proved by the 'same kind of evidence' offered in support of the original pleading. In making this decision, the court considers whether the 'allegations of a new theory in an amended complaint ... involve[ ] the same transaction, occurrence, or core of operative facts involved in the original claim.' " *Percy v. San Francisco General Hosp.*, 841 F.2d 975, 978 (9th Cir.1988) (citation omitted). The key question is whether the operative facts are similar enough to "impart fair notice of the transaction, occurrence, or conduct called into question." *Martell v. Trilogy Ltd.*, 872 F.2d 322, 327 (9th Cir.1989). The Ninth Circuit has made clear that the emphasis is not on the legal theory asserted by Plaintiff, but rather on the operative facts of the claim. *FDIC v. Jackson*, 133 F.3d 694, 702 (9th Cir.1998).

Aside from CWABS 2007–11, the Original Complaint relates to the same offerings and the same offering materials as the FAC. However, the complaints differ with respect to the specific facts alleged regarding those offering materials. Specifically, the Original Complaint expressly disclaimed all allegations of fraud and scienter. Original Complaint at n. 1. The FAC included pages of new allegations designed to show that the Defendants knew that the offering documents contained material misrepresentations and omissions. FAC at 170–173.

The question of whether an amended complaint that—for the first time—introduces scienter-based allegations relates back to an earlier complaint which disclaimed scienter is a novel one. Plaintiff cites a case, *In re Dynegy Inc. Sec. Litig.*, which held that '34 Act claims related back to earlier-filed '33 Act claims. 339 F.Supp.2d 804, 887 (S.D.Tex.2004); Supp. Opp. at 4. But in that case the defendants did not dispute relation back and the court held that the defendant was on notice of the fraud claim. *In re Dynegy Inc. Sec. Litig.* at 887. Neither is true here. Defendants vigorously contest relation back, and they could not have been on notice of Plaintiff's scienter-based claims because the Original Complaint expressly disavowed them. Several courts have held that a § 11 claim relates back to an earlier-filed § 10(b) claim. *See, e.g., Alpern v. UtiliCorp United, Inc.*, 84 F.3d 1525, 1543–44 (8th Cir.1996). This scenario is not instructive either: to plead a § 10(b) claim, a plaintiff is required to plead a material misrepresentation. When that misrepresentation occurred in an offering document, it follows that the defendant was on notice of the facts constituting the later-filed § 11 claim. The reverse is not true: a § 11 plaintiff need not have pled scienter, reliance, or loss causation in its earlier complaint.

In a different context—*American Pipe* tolling—courts have held that, when a cause of action requires pleading new and different facts (in those cases reliance), the earlier-filed action does not give the defendant notice of the new claim. *Lindner Dividend Fund, Inc. v. Ernst & Young*, 880 F.Supp. 49, 54–55 (D.Mass.1995) ("[B]ecause the 'legal standards for bringing an action under § 18 are significantly different from those for 10(b),' ... the

tolling doctrine of *American Pipe* does not apply to plaintiffs' claims."); *Special Situations Fund III, L.P. v. Am. Dental Partners, Inc.*, 775 F.Supp.2d 227, 246 (D.Mass. 2011) ("[t]he legal standards for proving Section 18 and Section 10(b) claims are sufficiently distinct that filing a class action alleging a violation of Section 10(b) does not toll the statute of limitations for a Section 18 claim."); *Wyser–Pratte Mgmt. Co. v. Telxon Corp.*, No. 5:02CV1105, 2003 WL 25861087, at *18–19 (N.D.Ohio June 4, 2003) ("Given the meaningful distinctions between the … § 10(b) claims and those asserted … under § 18, the Court finds that class tolling does not apply.").

The legal standards for relation back and *American Pipe* tolling are somewhat distinct, but the Court finds the logic of the *Lindner* line of cases persuasive. In those cases, the courts noted that a § 18 claim requires plaintiffs to plead actual reliance. The plaintiffs had not pled any operative facts about reliance in the initial complaint, and so the defendants had not been put on notice that they would need to preserve evidence or craft a litigation strategy relating to reliance. *E.g., Lindner*, 880 F.Supp. at 54–55. The same logic applies here. Facts sufficient to support a strong inference of scienter are a necessary component of a fraud-based claim. The Original Complaint expressly disclaimed all such facts. Original Complaint at n. 1. Therefore, the Original Complaint was explicitly missing facts necessary to plead a fraud claim. With respect to scienter, the Original Complaint and the FAC therefore do not arise out of the "core of operative facts" and the Original Complaint certainly would not have put Defendants on notice of facts regarding an impending fraud claim. *Percy*, 841 F.2d at 978. Accordingly, the relation back doc-

trine does not apply. The threshold date for statute of limitations and repose analysis is February 14, 2011 for Plaintiff's fraud-based claims.

### 3. Statute of Repose

■■ An action under § 10(b) of the Exchange Act or Rule 10(b)(5) is subject to a five-year statute of repose. The period begins to run on the date that the plaintiff purchased the securities at issue. 28 U.S.C. § 1658(b)(2); *Arnold v. KPMG LLP*, 334 Fed.Appx 349, 351 (2d Cir.2009) (Statute of repose begins to run "on the date the parties have committed themselves to complete the purchase or sale transaction.") (citation omitted). The first time that Plaintiff asserted § 10(b) claims was in the FAC on February 14, 2011. ECF No. 73. Plaintiff has asserted no tolling argument with respect to these claims, and any such argument would be unavailing because *Luther* did not include § 10(b) claims. Therefore, Plaintiff may not assert a § 10(b) claim for any certificate which it purchased prior to February 14, 2006. Plaintiff's Opposition states that it purchased eight of the fifteen RMBS certificates at issue prior to February 14, 2006.[8] The Court therefore **GRANTS** Defendants' motions to dismiss Plaintiff's § 10(b) claims with respect to the eight certificates listed in Footnote 8 with respect to **ALL DEFENDANTS**. Dismissal is **WITH PREJUDICE** and therefore Defendants' other arguments regarding these claims are moot.

### 4. Statute of Limitations

■■ Defendants allege that Plaintiff's claims for the remaining seven certificates are barred under the statute of limitations. Countrywide Defs' Motion at 8–

---

**8.** The securities are: CWABS 2004–R, 2A; CWABS 2004–Q, 2A; CWHEQ 2005–A, 2A; CWHEQ 2005–D, 2A; CWHEQ 2005–E, 2A; CHL 2006–HYB1, 1A1; CWALT 2005–J1, 3A1; and CWALT 2005–40CB, A1.

19. Plaintiff disputes this, arguing that their fraud claims did not accrue until mid-2009 at the earliest. Opp. at 19–21. This inquiry, unlike the statute of repose issues discussed above, requires more than a technical review of offering and sale dates. The statute of limitations does not begin to run until Plaintiff either knew, or through the exercise of reasonable diligence should have known, "the facts constituting the violation." *Merck & Co., Inc. v. Reynolds,* —— U.S. ——, 130 S.Ct. 1784, 1798, 176 L.Ed.2d 582 (2010). And, facts sufficient to establish scienter are among those that constitute the violation. *Id.* "Until the plaintiff has uncovered—or a reasonably diligent plaintiff would have uncovered—enough information about the defendant's knowledge or intent to satisfy this pleading standard, he has not 'discovered' the fact of scienter, and the statute of limitations cannot begin to run." *City of Pontiac General Employees' Retirement System v. MBIA, Inc.,* 637 F.3d 169, 174 (2d Cir.2011). *Accord Betz v. Trainer Wortham & Co., Inc.,* 610 F.3d 1169 (9th Cir.2010) (remanding for further consideration in light of Merck).

The gravamen of Plaintiff's § 10(b) allegation is that, beginning in 2003, Countrywide knowingly and systematically abandoned its underwriting practices in a desire to increase its market share and sell ever-more shaky mortgages into the secondary market as MBS. FAC at ¶¶ 65–74. This abandonment took the form of haphazardly matching features from different competitors without adequately implementing safeguards (*id.* at ¶¶ 75–81), ignoring or manipulating borrower's creditworthiness (*id.* at ¶¶ 82–94), using improper metrics to evaluate borrowers (id. at ¶¶ 95–105), granting exceptions to underwriting policies (*id.* at ¶¶ 106–15), using improper standards for home appraisals (*id.* at ¶¶ 116–127), deceiving the rating agencies (*id.* at ¶¶ 128–39), failing to properly convey title to secondary purchasers (*id.* at ¶¶ 140–47), and cherry-picking good loans for its own portfolio while selling low-quality loans into the secondary market (*id.* at ¶¶ 148–51). According to the complaint, Countrywide knowingly misrepresented the quality of the loans it was making because its only concern was ensuring that the loans could be sold into the secondary market. *Id.* at ¶ 112. If a loan could be sold, then Countrywide would not bear any risk on the loan and so had no incentive to properly underwrite the loan. Countrywide allegedly made false and misleading statements about these practices in offering documents, Plaintiff relied on them, and was injured when it turned out that mortgages underwritten by Countrywide turned out to be considerably riskier than advertised.

Determining the date on which the statute began to run requires the Court to determine when Plaintiff knew or should have known (i) that Countrywide's statements about its lending standards were false, (ii) that the misrepresentations were made with scienter, and (iii) that Plaintiff was aware of its injury. The injury that Plaintiff alleges is that it purchased riskier-than-advertised RMBS because of Countrywide's misrepresentations. It follows that the injury accrued at the same time the alleged misrepresentations came to light, not at the time the risk actually materialized in the form of defaults or lower market values. *See In re Oracle Corp. Sec. Litig.,* 627 F.3d 376, 392 (9th Cir.2010) (Loss must be traceable to the public discovery of the misrepresentation.). Accordingly, the Court finds that the third threshold date is coterminal with the first and declines to conduct a separate inquiry into when Plaintiff should have become aware of its injury. The Court is left to determine when a reasonably prudent investor should have discovered Countrywide's misrepresentations

and when a reasonably prudent investor should have discovered facts constituting scienter.

 The Ninth Circuit has held that, "[t]he question of what a reasonably prudent investor should have known is particularly suited to a jury determination" and that "the defendant bears a considerable burden in demonstrating, at the *summary judgment stage,* that the plaintiff's claim is time barred." *Betz v. Trainer Wortham & Co.,* 519 F.3d 863, 877 (9th Cir.2008) (emphasis added). It follows that the burden is even higher at the pleading stage. However, the Court is entitled to "take judicial notice of publications introduced to indicate what was in the public realm at the time, not whether the contents of those articles were in fact true." *Von Saher v. Norton Simon Museum of Art at Pasadena,* 592 F.3d 954, 960 (9th Cir.2010). A motion to dismiss is appropriate where the complaint, documents referred to therein, and public press reports yield no other plausible inference than that a reasonably diligent plaintiff should have discovered facts sufficient to state a claim more than two years before suit was actually filed. *In re American Funds Securities Litigation,* 556 F.Supp.2d 1100, 1108 (C.D.Cal.2008) (dismissal appropriate at motion to dismiss stage when an unusually detailed factual record makes clear that plaintiff is on notice). *But cf. In re Charles Schwab Corp. Sec. Litig.,* 257 F.R.D. 534, 557 (N.D.Cal. 2009) (dismissal not appropriate where no-

tice is the "inference most naturally derived" from the allegations in the complaint, but not the *only* possible inference).

Other complaints and public press reports make clear that a reasonable investor would have been aware of problems with underwriting at Countrywide by early 2008. The FAC itself refers to the fact that, "[t]he different ways by which Countrywide abandoned its underwriting guidelines have now been detailed extensively in numerous governmental investigations and private lawsuits." FAC at ¶ 69. Many of these investigations and lawsuits were public and well-publicized. For instance, a reasonably diligent investor should have been aware of at least some of the following allegations regarding underwriting at Countrywide: [9]

- *Ark. Teachers Ret. Sys. v. Mozilo,* No. 07–CV–06923–MRP (MANx) (C.D.Cal.), which asserted § 10(b) claims and alleged that the defendants "allowed Countrywide to abandon or ignore loan underwriting standards." (filed Nov. 26, 2007).

- *New York City Emp. Ret. Sys. v. Countrywide Fin. Corp.,* No. 08–CV–00492–ODW (C.D.Cal.), which asserted 1934 Act fraud claims and alleged that "defendants misled investors by falsely representing that Countrywide had strict and selective underwriting and loan origination practices." (filed Jan. 25, 2008).

**9.** At oral argument, Plaintiff argued that allegations contained in a complaint are just that, allegations, and that they are not necessarily true, nor do they necessarily put a party on notice until the allegations are corroborated by facts. Without disputing the premise that plaintiff's firms sometimes file premature and poorly researched complaints, this is not such an edge case. First, reports of problems with underwriting at Countrywide were widely disseminated in the press, corroborated in gov-

ernment hearings and by the announcement of investigations, and bolstered further when several state Attorneys General filed suit. Second, the 2007 and 2008 complaints were voluminous documents which provided impressive detail and were further supported by confidential witness reports. Finally, these are, in many cases, the exact same complaints and news articles which Plaintiff uses to bolster its claims. *See, e.g.,* Opp. at 73–74.

- *In re Countrywide Fin. Corp. Deriv. Litig.*, No. 07–CV–06923–MRP (MANx) (C.D.Cal.), which asserted 1934 Act fraud claims and similarly alleged "Countrywide's conscious abandonment of its underwriting standards," "use of deceptive lending practices to extend credit to persons who could not afford to repay the loans," "classif[ying] loans as 'prime' that clearly were not," and "falsify[ing] appraisals." (filed Feb. 15, 2008).

- *In re Countrywide Fin. Corp. Sec. Litig.*, No. 07–CV–05295–MRP (MANx) (C.D.Cal.) ("*NY Funds*"), which asserted 1934 Act fraud claims and alleged that "Countrywide ignore[d] and abandon[ed] its underwriting standards," made loans to "unqualified borrowers," abused the exceptions and low-documentation loan processes, "classif[ied] subprime loans as 'prime,'" and used "inflated appraisals." (filed April 11, 2008).

- *Argent Classic Conv. Arb. Fund L.P. v. Countrywide Fin. Corp.*, No. 07–CV–07097–MRP (MANx) (C.D.Cal.), which asserted 1934 Act and state law fraud claims and alleged that Countrywide made "high-risk loans to unqualified borrowers," "abandoned the Company's stated lending practices and began sacrificing loan quality for quantity," and faced significant credit exposure due to its heavy reliance on "exception," "stated income," and "no-doc" loans.

Additionally, the *Luther* state court complaints allege the same abandonment of underwriting standards and misrepresentations as the FAC. Indeed, Plaintiff relies on that fact for its assertion that the *Luther* complaints toll its §§ 11 and 12(a)(2) claims. FAC at 120–25. Therefore, Plaintiff was clearly on notice of Countrywide's misrepresentations regarding underwriting standards by late 2007 or early 2008.

Plaintiff argues that it could not have discovered either (i) several specific facts about the extent of the problems or (ii) facts confirming scienter on behalf of Countrywide's top executives until the SEC filed its complaint in June 2009. Opp. at 19–21. Neither argument is persuasive.

In the first instance, for each supposed revelation in the SEC complaint, Defendants have pointed to a virtually identical allegation in a prior complaint. Countrywide Defendants' Motion to Dismiss Demonstrative. At best, Plaintiff has identified minor and semantic differences in phrasing between the SEC complaint and earlier press reports and complaints. To focus on these semantic differences rather than the totality of the accusations would render the statute of limitations meaningless. A statute which does not begin to run until every possible phrasing or permutation of the defendant's wrongdoing has been publicly reported would never run. Each new news report or interview with company executives would reset the clock. This is not the law. A complaint and its allegations must instead be read in their totality. Here, the gravamen of Plaintiff's claim is that Countrywide wholly abandoned its underwriting standards. The press and numerous widely reported lawsuits had made exactly this allegation by the end of 2007. Therefore, Plaintiff is not entitled to rely on the SEC complaint as its "trigger" event with respect to Countrywide's alleged misrepresentations regarding its underwriting practices.

 The Second Circuit, applying *Merck*, recently recognized and addressed this issue. It held that the statute begins to run when a plaintiff has (or a reasonably diligent plaintiff should have) "information and evidence [sufficient] to survive a mo-

tion to dismiss," not when a plaintiff has every conceivable fact that it will ultimately use to prove its case. *City of Pontiac*, 637 F.3d at 174. Numerous lawsuits alleging risky loan-origination practices at Countrywide have, in fact, survived motions to dismiss. *See, e.g. In re Countrywide Financial Corp. Securities Litig.*, 588 F.Supp.2d 1132, 1186 (C.D.Cal.2008) ("[Plaintiffs] raise strong inferences that (1) borrower requirements were progressively loosened over the Class Period; (2) in many instances, the actual loan quality was lower than the borrower's FICO score and LTV ratio suggested because Countrywide misrepresented how lax its verification practices became; and (3) Countrywide management routinely circumvented the normal underwriting process by approving highly risky loans for sale into the secondary market."); *In re Countrywide Fin. Corp. Derivative Litig.*, 554 F.Supp.2d 1044, 1057 (C.D.Cal.2008) ("Plaintiffs' allegations create a cogent and compelling inference that the Individual Defendants misled the public with regard to the rigor of Countrywide's loan origination process, the quality of its loans, and the Company's financial situation-even as they realized that Countrywide had virtually abandoned its own loan underwriting practices."); *Centaur Classic Convertible Arbitrage Fund Ltd. v. Countrywide Financial Corp.*, 793 F.Supp.2d 1138, 1145–46 (C.D.Cal.2011). The Court takes judicial notice of these suits as evidence that a reasonably diligent investor should have been aware of facts regarding Countrywide's risky loan origination operations and the associated misrepresentations.

Plaintiff protests that earlier lawsuits did not place it on notice because those suits involved equity or debentures rather than RMBS. Opp. at 33–38. Plaintiff relies heavily on *In re Ames Department Stores, Inc. Note Litig.*, 991 F.2d 968 (2d Cir.1993). That reliance is misplaced. Plaintiff is surely correct that debt re-

sponds to financial fluctuations differently than equity. *Ames* recognized that noteholders are less sensitive to daily price fluctuations than equity holders. Therefor, the *Ames* plaintiffs were not put on notice by fluctuations in the price of equity and a corresponding shareholder suit because revelations which impacted the debt had not yet come to light. *Id.* at 980–81. In relying on *Ames*, Plaintiff misses the point that this suit does not involve Countrywide debt, but rather loans to individuals secured by mortgages which Countrywide both held for its own account and sold into the secondary market.

Countrywide had only one business: underwriting mortgages which it either held for its own portfolio or sold into the secondary market. The shareholder, debenture holder, and derivative suits against Countrywide all made the same allegation: Countrywide stock/debt decreased in value when the market realized that Countrywide had been misrepresenting the quality of the loans it was writing. These allegations involve the same underlying conduct (abandonment of underwriting standards) and the same fraudulent purpose (concealing true loan quality from the market so that Countrywide could continue to increase market share, sell RMBS, and inflate its stock price) as alleged here. The facts necessary to survive a motion to dismiss on that theory are identical to those required to survive a motion to dismiss on Plaintiff's theory: misrepresentation of underwriting standards, scienter, and a loss traceable to the misrepresentation.

Plaintiff either misunderstands or misrepresents the theory of harm advanced in the earlier suits that it attempts to distinguish. Countrywide underwrote risky loans—some of which it kept on its books and some of which it packaged and sold as RMBS. When the performance of those loans was worse than expected, Country-

wide suffered losses. These losses led it to take an enormous charge against earnings in July 2007, led to further charges, and led the market to question Countrywide's ability to maintain its massive market share going forward. In this sense— though the causes of action might be different—Countrywide shareholders and noteholders have been injured in the same way as secondary purchasers. *See In re American Funds Securities Litigation,* 556 F.Supp.2d 1100, 1108 (C.D.Cal.2008) (earlier complaint put plaintiff on notice of its claim, despite fact that earlier complaint alleged a different cause of action). Plaintiff's attempts to distinguish the earlier-filed complaints are fruitless. Moreover, Plaintiff either forgets or omits several lawsuits which *do* involve purchasers of RMBS. Specifically, the *Luther* complaints allege virtually identical misstatements to those in the FAC.

■■■ For the same reasons as above, the Court holds that public press reports and earlier-filed lawsuits placed Plaintiff on notice regarding the scienter element of its claim. Plaintiff alleges that the various defendants each *knew* that Countrywide had abandoned its underwriting guidelines but nevertheless allowed the misrepresentations to stand. FAC at ¶¶ 170–73. Each of the *Shareholders, Derivative,* and *Centaur* complaints discussed above raised scienter allegations in the context of § 10(b), and in each instance this Court found that those complaints alleged, with adequate particularity under Rule 9(b), that Countrywide and its executives acted with scienter in abandoning their underwriting standards. *See, e.g., In re Countrywide Fin. Corp. Derivative Litig.,* 554 F.Supp.2d at 1057.

Plaintiff's reliance on semantic distinctions and supposedly new revelations in the SEC complaint is not persuasive. The SEC complaint may perhaps include more detail than earlier-filed complaints, but it does not contain any fundamentally new revelation. All the facts alleged had been widely reported already: Countrywide was a massive operation with a top-down culture and only one line of business, which virtually ensured that top executives would know of fundamental business shifts. *Id.* at 1059. Deviations from underwriting standards were widespread, providing an inference that management knew of them. *Id.* at 1058. Evidence of decreasing loan quality was readily available to management. *Id.* at 1060. Insiders sold large amounts of their own stock while simultaneously causing Countrywide to repurchase shares. *Id.* at 1066–69. All of these facts were publicly reported and appear in multiple complaints filed in 2007 and 2008. As discussed above, the statute of limitations begins to run when a plaintiff knows or should know enough facts giving rise to a strong inference of scienter to survive a motion to dismiss. Other plaintiffs recognized that such facts were available by 2007, and this Court subsequently held that those plaintiffs had pleaded scienter adequately.

For the foregoing reasons, the Court finds that a reasonable plaintiff exercising reasonable diligence (and particularly "one of the three largest pension funds in the world," FAC at ¶ 14) should have discovered facts sufficient to state every element of its claim at least prior to February 14, 2009. The Court accordingly **GRANTS** Defendants' motions to dismiss Plaintiff's remaining § 10(b) claims with respect to **ALL DEFENDANTS.**

**D. PLAINTIFF'S SECTION 20(A) CLAIMS**

Plaintiff asserts control person claims against CFC, CCM, Mozilo, and the Individual Defendants under § 20(a) of the Exchange Act. FAC at ¶¶ 247–52. Section 20(a) is a control person liability statute which requires a predicate violation in

order to proceed. This Court has dismissed Plaintiff's predicate § 10(b) claims, and it therefore **GRANTS** Defendants' motions to dismiss Plaintiff's § 20(a) claims with respect to **ALL DEFENDANTS** for failure to allege a valid predicate violation.

### E. PLAINTIFF'S STATE LAW FRAUD AND AIDING AND ABETTING CLAIMS

 Plaintiff's state law fraud and aiding and abetting claims first appeared in the FAC. The statute of limitations for a fraud action in California is three years from the discovery "of the facts constituting the fraud or mistake." Cal.Code Civ. Proc., § 338(d). "The courts interpret discovery in this context to mean not when the plaintiff became aware of the specific wrong alleged, but when the plaintiff suspected or should have suspected that an injury was caused by wrongdoing. The statute of limitations begins to run when the plaintiff has information which would put a reasonable person on inquiry. A plaintiff need not be aware of the specific facts necessary to establish a claim since they can be developed in pretrial discovery." *Kline v. Turner*, 87 Cal.App.4th 1369, 1374, 105 Cal.Rptr.2d 699 (Cal.App. 2001).

The threshold date for statute of limitations purposes is therefore February 14, 2008,[10] and the Court applies the more lenient inquiry notice standard which prevails under California law.

The February 2008 date presents a closer question than the 2009 date analyzed in Section III.C.4 above. The wave of complaints cited above and in Defendants' papers was filed between August 2007 and September 2008. Countrywide Def's Mot. at 10–12. Clearly other plaintiffs were continuing to investigate and bolster their allegations throughout the 2008 time frame. However, under California law, a plaintiff need not be aware of every fact that it ultimately relies upon in its pleadings before the statute begins to run. It is enough that it be on inquiry notice that the injury was "caused by wrongdoing." *Kline*, 87 Cal.App.4th at 1374, 105 Cal. Rptr.2d 699. The Ninth Circuit recently considered the question of inquiry notice under California law:

> Appellant argues that its fraud claim did not accrue until a deposition in 2003, when it learned of Appellees' specific intention to deceive their customers regarding the health hazards of Calidria. The district court found that the deposition did not provide Appellant with any information that would have been the source of this alleged eureka moment. Furthermore, it is not necessary that Hamilton had notice of Appellees' specific intention to deceive before the fraud action accrued. All that is relevant is that a reasonable person—especially a sophisticated manufacturer of asbestos—would have been on notice of a potential misrepresentation. This is the date that the complaining party learns, or at least is put on notice, that a representation is false.

*Hamilton Materials, Inc. v. Dow Chemical Corp.*, 494 F.3d 1203, 1206–07 (9th Cir.2007). The widespread public press coverage combined with the filing of the shareholder suits in August 2007, the *Ark. Teachers Ret. Sys.* action in November 2007, and the *New York City Emp. Ret. Sys.* action in January 2008 were enough to alert a reasonable person to wrongdoing in Countrywide's loan origination business. The Court accordingly **GRANTS** Defen-

---

**10.** Plaintiff urges that the fraud claims were asserted via amended complaint on February 9, 2011, rather than February 14, 2011. Opp. at n. 9. It is not clear what Plaintiff's basis for this assertion is: the FAC is dated February 14, 2011. The Court therefore regards February 14, 2011 as the operative date.

dants' motions to dismiss Plaintiff's fraud and aiding and abetting claims with respect to **ALL DEFENDANTS.**

### F. PLAINTIFF'S NEGLIGENCE AND CAL. CORP CODE §§ 25400 AND 25500 ET. SEQ. CLAIMS

Plaintiff's remaining state law claims are subject to a two-year statute of limitations. Cal. Corp.Code § 25506(b) ("no action shall be maintained to enforce any liability created under Section 25500, 25501, or 25502 (or Section 25504 or Section 25504.1 insofar as they related to those sections) unless brought before the expiration of . . . two years after the discovery by the plaintiff of the facts constituting the violation."); *Platt Elec. Supply, Inc. v. EOFF Elec., Inc.*, 522 F.3d 1049, 1054 (9th Cir.2008) ("For negligent misrepresentation, there is a two-year statute of limitations").[11] The remaining state law counts are therefore untimely for the same reasons discussed in Section III.C.4 above. The Court accordingly **GRANTS** Defendants' motions to dismiss Plaintiff's remaining state law claims with respect to **ALL DEFENDANTS.**

## IV. CONCLUSION

Because Plaintiff has not met its requirement to establish that its Securities Act claims were tolled, the Court **DISMISSES** Counts VI, VII, and VIII with leave to amend. Because the Court determines that Counts I, II, V, IX, and X are time-barred under the applicable two-year statute of limitations, the Court **DISMISSES** Counts I, II, V, IX, and X **WITH PREJUDICE.** Because the Court determines that Counts III and IV are time-barred under the applicable three-year statute of limitations, the Court **DISMISS-** ES Counts III and IV **WITH PREJU-DICE.**

The Court **GRANTS** Plaintiff leave to file a Second Amended Complaint no later than 30 days from the date of this Order.

**IT IS SO ORDERED.**

---

11. Plaintiff argues that its negligent representation claim is "coupled" with its fraud claim and therefore subject to a three-year statute of limitations. Opp. at 22. However, the FAC expressly disclaimed all of its scienter allegations with respect to its negligence-based claims. FAC at ¶ 170. Therefore, the claims are not coupled and Plaintiff is held to a two-year statute of limitations for its negligence claims.